**BONAPARTE, Co. Treas., v. NELSON.**

No. 20068.  Opinion Filed Oct. 1, 1929.

Rehearing Denied March 11, 1930.

Geo. M. Callihan, Co. Atty., and I. L. Harris, Asst. Co. Atty., for plaintiff in error.

Brown & Stater, for defendant in error.

SWINDALL, J. This action comes to this court on appeal from the district court of Oklahoma county, wherein George P. Nelson, as plaintiff, commenced an action against E. B. Bonaparte, county treasurer of Oklahoma county, Okla., as defendant, to recover certain taxes paid by him under protest for the fiscal year ending June 30, 1928, and which he claims were illegally levied.

Briefly stated, the defendant in error contends that the tax is illegal upon five distinct and separate grounds, namely: (1) That the financial statement and estimate of needs was not published as is by law required; (2) that the financial statement and estimate of needs was not certified to the excise board as is by law required; (3) the minutes and records of the purported action of the excise board was never authenticated or certified to; (4) that the financial statement and estimate of needs was not properly signed or certified by the members of the excise board; (5) the levies as purported to have been made by the excise board were never certified to the officer whose duty it is to make up the tax roll. Defendant in error contends that all five of these omissions were established by positive facts at the trial.

The plaintiff in error contends that the defendant in error wholly failed to sustain the allegations of his petition and amendment thereto by a preponderance of the evidence.

The issue for us to determine is whether or not the ad valorem tax questioned in this action was levied in substantial compliance with the laws of this state.

By section 9694, C. O. S. 1921, there is created in each and every county in this state an excise board to be composed of the county clerk, county attorney, county treasurer, county judge, county superintendent of public instruction, county assessor, and one member of the board of county commissioners to be designated by said board, "which shall perform duties as hereinafter provided without additional compensation." The county judge shall be chairman and the county clerk secretary of said board.

Under section 9695, C. O. S. 1921, "each board of county commissioners, the mayor and council of each city, or the officers exercising like power in any city having a charter form of government, the board of trustees of each incorporated town, the directors of each township, and the board of education of each independent school district, shall meet on the first Monday in July of each year, and the directors of each school district shall meet on the second Tuesday in July of each year, and shall respectively make in writing a financial statement showing the true fiscal condition of their respective municipalities as of the close of the previous year, and an itemized statement of estimated needs and probable income from sources other than ad valorem tax of each thereof for current expense for the current fiscal year. The financial statement shall be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements, and shall be sworn to as being true and correct. The statement of estimated needs shall be itemized so as to show by classes: (1) The several amounts necessary for the current expense of the municipality, and each officer and department thereof; (2) the amount required by law to be provided for sinking fund purposes; (3) the probable income that will be received from all sources other than ad valorem taxes, and shall be detailed in form and amount so as to disclose the several items for which the excise board is authorized and required in section 5 hereof to approve estimates and make appropriations. Each financial statement and estimate for county, city, incorporated town, township and board of education, as prepared in accordance with the provisions of this section

56

shall be published in some newspaper published in said municipality, in one issue, if published in a weekly newspaper, and in two consecutive issues if published in daily; and if there be no paper published in each county, city, incorporated town or township, then a copy of such statement and estimate shall be posted in at least five public places therein, which posting shall be made in each instance within five days after the meeting of said municipal board; said publication or posting shall be made in each instance by the board or authority making the estimate. Said estimate so made out and published as aforesaid shall, as soon as completed, be certified to the excise board of the county together with an affidavit attached showing the publication or posting thereof as required by this act. The estimates and statements provided for in section 4 shall also at the same time be transmitted to the excise board."

The section 4 referred to herein is the same as section 9697, C. O. S. 1921, and provides that "each officer, board or commission of any county, city, township and school district or town, and all employees charged with the management or control of any department or institution or either thereof, shall on or before the first Monday in July of each year, make and file with the board or commission charged with the duty of reporting to the excise board, a report in writing showing by classes the earnings and cost of maintaining their respective offices or departments for the previous fiscal year, together with an itemized statement and estimate of the probable needs thereof for the current or ensuing fiscal year. Provided, that the report relative to the construction and repair of bridges shall be made by the county commissioners and county surveyors conjointly. and shall be itemized so as to show the location of each proposed new bridge, and estimated cost thereof, and provided, further, that the report relative to the probable needs of the courts of record shall be made by the court clerk and county attorney conjointly, and shall be itemized so as to show separately the respective needs of each court."

Section 9698, C. O. S. 1921, requires the excise board to meet at the county seat on the last Saturday of July, and authorizes said board to adjourn from day to day and time to time for the purpose of examining the financial statements for the previous fiscal year as submitted by the county and the several cities, towns, townships and school districts. and ascertaining the true financial condition of each thereof at the close of such year; and for the further purpose of examining the statements of estimated needs for current expense purposes for the current year as certified by each of said municipalities; and determining the items and amounts for which appropriations shall be made for such year, detailed as to each officer, board or department. The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate, and in no event shall any item or items of the estimate for current expense purposes be increased or new items added thereto, unless such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in one issue, if published in a weekly paper, and two consecutive issues, if published in a daily paper. The cost of any such publication shall be paid by the municipality. When the excise board shall have examined, revised and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary. The appropriations made for the use of each separate office, board, commission, or department of the several municipalities shall be stated in separate items, and no appropriation shall be available for the use of more than one office, board, commission or department.

Section 9699, C. O. S. 1921, provides that "when the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per cent. added thereto for delinquent tax. they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years. together with the amount of the probable income of each from all sources other

than ad valorem taxation, provided, that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year. The rates of levy for current expense purposes and sinking fund purposes shall be separately made and stated and the revenue accruing therefrom shall be known as the general fund and sinking fund, respectively; and shall, when so made, be certified to the officer whose duty it is to make up the tax rolls. The secretary of the excise board shall immediately certify the appropriation so made by the excise board to the clerk or other issuing officer of the municipality for which the same is made. The several items of the estimate as made and approved by the excise board for each fiscal year shall constitute and are hereby declared to be an appropriation of funds for the several and specific purposes named in such estimate, and the appropriation thus made shall not be used for any other fiscal year or purpose whatsoever. Each clerk or other issuing officer shall open and keep an account with the amount of each item of appropriation showing the purpose for which the same is appropriated and the date, number and amount of each warrant drawn thereon. No warrant or certificate of indebtedness in any form, shall be issued, approved, signed, attested or registered on or against any appropriation for a purpose other than for which the said appropriation was made, or in excess of the amount thereof."

We feel that the sections and portions of the sections of the statutes above mentioned are sufficient for the purposes of this case.

The excise boards of the several counties of this state are composed of the county officials named in section 9694; the county judges and county clerks being chairman and secretary, respectively, of said boards. These boards act as a body and not individually, and their proceedings are disclosed by the minutes and resolutions kept by the secretary of the board. There is no special form authorized and provided for by law for keeping the minutes, resolutions, and proceedings of the county excise boards. The excise boards, like municipal boards and other public officers, are presumed to discharge the duties which the law imposes upon them, and the same is true relative to the board of county commissioners and the school district boards and other municipal bodies that are required by law to make financial statements and estimates of needs and that are required to publish the same,

and in the absence of proof it will be presumed that the officers upon whom acts and duties are enjoined by law performed those duties. This presumption continues in favor of the acts of such officers until it is affirmatively shown by competent evidence to the contrary. Hicks v. Sanders, County Treasurer, 132 Okla. 242, 269 Pac. 297; Southern Surety Co. v. Waits, 45 Okla. 513, 146 Pac. 431; Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213; Board of County Com'rs of Garfield County v. Field, 63 Okla. 80, 162 Pac. 733; Garrett v. State, 113 Okla. 63, 238 Pac. 846; Williamson-Halsell-Frazier Co. v. State, 68 Okla. 40, 171 Pac. 453.

There is no dispute that the various boards that were required to make in writing financial statements showing the true financial conditions of their respective municipality as of the close of the previous year, and that an itemized statement of estimated needs and probable income from sources other than ad valorem taxes, met as required by law, and made said statements supported by schedules or exhibits, as required by law, but it is contended that it is not shown that the statements were published as required by law. The presumption of law is that the same were published, and the burden was on the plaintiff to show that this requirement of the law was not met, and this the plaintiff failed to do.

It is next contended that the financial statement and estimate of needs was not certified to the excise board as required by law. An examination of the record discloses that the same was properly certified. The third contention of plaintiff, defendant in error, is that the minutes and records of the purported action of the excise board were never authenticated or certified to. We cannot agree with this contention. The law makes the county clerk the secretary of the excise board, and the county clerk certified to the record and proceedings in substantial compliance with the statutes. The law provides that the secretary of the excise board shall immediately certify the appropriation so made by the excise board to the clerk or other issuing officer of the municipality for which the same is made.

It seems to be the contention of plaintiff, defendant in error, that all members of the excise board shall sign the certificate showing the proceedings of the meeting, for the reason that the State Examiner and Inspector prepared forms with a certificate to be signed by all such members; however, the

statute does not require that all members of the excise board sign the minutes or certificate. Hence, when the records show that the meeting was held, and how the members voted and that the levies were voted and were within the constitutional and statutory limit and the clerk ordered to certify the same and the clerk does so, and proper minutes of the meeting are kept or such note or memorandum is compiled by the secretary in accordance with the findings, vote, and directions of the county excise board, then the law is substantially complied with. The objects of the statute are to require the county commissioners and the officers of cities, towns, townships, and school districts to make financial statements of the needs of the respective bodies and to publish the same, showing to the taxpayers the necessity for making ad valorem tax levies and the amount necessary to be raised in requiring the excise board to make levies in accordance with the estimates.

The precise question relative to the keeping of the minutes of the county excise board does not appear to have ever been before this court for determination, but has been decided in accordance with the views herein expressed by other courts of last resort having similar statutes on the subject under consideration. Becker v. Malheur Co. (Ore.) 33 Pac. 543; Vaughn v. School District (Ore.) 39 Pac. 393; The People of the State, etc., v. Eureka Lake and Yuba Canal Co. et al., 48 Cal. 143; Kansas City, F. S. & G. R. Co. v. John Tontz, Treasurer, 29 Kan. 360; Boyce v. Auditor General (Mich.) 51 N. W. 457; Beirl v. Columbia County et al. (Ore.) 144 Pac. 457.

For the reasons herein stated, we hold that the objections to the financial statement and estimate of needs not having been properly signed by the members of the excise board, and that the excise board never certified to the county assessor the levies as purported to have been made, and never authenticated the minutes and records of the action of the excise board and never properly certified the financial statement and estimate of needs, are not well taken

We further hold that the trial court erred in ruling, finding, and holding that it was necessary for the individual members of the excise board to certify and sign the financial statement and estimate of needs, or to sign the certificate certifying the levies to the county assessor. The county clerk, as secretary of the excise board, keeps the minutes, records, and proceedings of the board.

and may certify to the same. The minutes of the meetings of the excise board should be signed by the county judge as chairman and properly attested by the county clerk as secretary; however, if this is overlooked, then the genuineness and correctness of the minutes, resolutions, records, and proceedings may be established by the testimony of the clerk or members of the board who were present and can testify as to what was actually done. We think it advisable for the county excise boards to follow the forms prescribed by the State Examiner and Inspector and all members sign the same as a matter of identifying the record and refreshing the memory of the members of the board as to who was present and the dates of the meetings of the board, should future occasion ever demand, but this is not required by the statutes of this state and we will not hold the tax levy illegal because that course is not followed where the law does not require it to be done.

We agree with counsel for plaintiff, defendant in error, that the financial statement and estimate of needs must be published substantially in compliance with the laws of this state requiring the same to be published, and if as a matter of fact the same was not published, then the levy would be illegal and void; but the burden was upon the plaintiff, defendant in error, to establish as an affirmative fact that the financial statement and estimate of needs was not published. The mere fact that the publishers' affidavit was not attached to the financial statement and estimate of needs that was offered in evidence does not show or tend to show that the estimate so made out was not published and certified to the excise board of the county and that the affidavit showing the publication thereof was not attached to the printed copy. The law presumes that the excise board were in possession of the proof of the publication of the financial statement and estimate of needs when they made the levies, for the reason that the law requires the estimate and financial statement to be published and to be certified to them, and the presumption of law is that the commissioners performed their duty and certified and published the financial statement and estimate of needs as by law required, it being one of their official duties to do so. The evidence shows that the original was properly prepared, and the photostatic copy disclosed by the case-made at pages 164-179 is in the usual form retained by the county clerk, and the clerk testified that said financial statement and

estimate of needs, marked "Exhibit F," being the one above mentioned, reflects the truth, and this evidence was not denied. It is claimed, however, that it was not signed by some of the members of the excise board until in the spring following the levy. The law was complied with when these officers performed their duties, and the fact that the clerk may have overlooked some purely ministerial duty in keeping his records will not defeat the tax levy.

The deputy court clerk, who was also deputy secretary of the county excise board by virtue of his office, was called as a witness and could have been interrogated concerning the publication of the financial statement and estimate of needs, and if the same had not been published and proof of publication was not on file in his office, this fact could have been determined by asking him the question, "Was the financial statement and estimate of needs published in a weekly or daily newspaper of general circulation in Oklahoma county?" If his answer had been in the negative, then the tax levy would have been illegal and void, but if in the affirmative, then the levy, in so far as the publication was required, would have been legal.

Proof of publication or failure to publish could have been easily established. Counsel for plaintiff, defendant in error, knew that this court had repeatedly held that public officers were presumed to perform their duty, and also knew that one of the duties of the excise board was to publish the financial statement and estimate of needs, and likewise knew that the presumption of law was that the same had been published as required by law and that all the necessary proceedings and steps relative to the making and publishing of the financial statement and estimate of needs and relative to the levy of the tax required by the several officers to be made, were presumed to have been performed as by law required, and that this court had repeatedly held that it would indulge in the presumption that public officers had performed their duty until the contrary was established by evidence, and the defendant in error, plaintiff in the trial court, having failed to offer proof to establish the contrary, failed to sustain the material allegation of his petition, and the trial court erred in rendering judgment in favor of the plaintiff, defendant in error.

This court has never held that a tax levy will be sustained as valid unless it was levied in substantial compliance with the statutes, in order that the taxpayer may know for what purpose and the amount of the tax being levied and that it is necessary to sustain the needs of the county and the subdivisions thereof and that it comes within the constitutional and statutory limits, and that the taxpayers' property may not be sacrificed and his rights injuriously affected. On the other hand, where the levy is made in substantial compliance with law, it should be sustained; otherwise the state and county government could not exist and our school system would crumble.

It takes revenue to maintain the state government and the subdivisions thereof, and where the tax is illegal or excessive, then the same should be so held, but where it is just and comes within the constitutional and statutory limits, it should be sustained, and no tax should be held invalid upon mere technical grounds, and where it appears to this court that all the provisions of law relative to making the levy have been substantially complied with, we will hold the levy valid.

For the reasons herein expressed, the judgment of the district court of Oklahoma county is hereby in all things reversed, and said cause is hereby remanded to the district court of Oklahoma county, Okla., with directions to vacate the judgment in this cause and to enter judgment in favor of the defendant, plaintiff in error, and against plaintiff, defendant in error, denying the prayer of plaintiff's petition at the cost of said plaintiff, and releasing the tax held by the defendant and ordering the same distributed, and to take such other action and proceedings herein as may be consistent with this opinion.

LESTER, V. C. J., and HUNT, RILEY, CULLISON, and ANDREWS, JJ., concur. CLARK, J., dissents. MASON, C. J., and HEFNER, J., absent and not participating.

ANDREWS, J. (dissenting). I dissent from the opinion in this cause, both as to the law and the conclusion. I concurred in the opinion, but in the petition for rehearing and in the oral argument thereon, my attention has been called to certain facts shown by the record that were not called to my attention at the time the opinion was under con-

sideration. I express my views as follows:

George P. Nelson was the owner of certain real estate in Oklahoma county which had been assessed on an ad valorem basis for the fiscal year beginning July 1, 1927. He paid the tax thereon under protest at the time and in the manner provided by law, and in his protest notice he alleged that the tax was illegal for want of authority to make the levies, because the levies exceeded the statutory and constitutional limitations, because the levies had not been made in the manner and method prescribed by law, and because they produced an amount in excess of the estimated needs. Within 30 days after the payment of the tax he brought suit to recover the amount alleged to be illegal. After the issues were made up a jury was waived, the cause was tried to the court, and the court rendered a judgment in favor of the plaintiff and against the defendant. The trial court found "that the financial statement and estimate of needs made for the benefit of Oklahoma county to the excise board were not certified and signed by the board of county commissioners of Oklahoma county"; that the "financial statement and estimate of needs was not certified and signed by the excise board in and for Oklahoma county prior to the collection of said tax and the institution of this cause of action"; that the "rates of levy for Oklahoma county were not certified or signed or forwarded to the county assessor in and for Oklahoma county for extension upon the tax rolls," and that therefore the levies were illegal, excessive and void, that the tax collected from the plaintiff was without authority of law and that the amount protested should be refunded. From that judgment an appeal was taken by the defendant to this court.

For convenience the parties will be referred to herein as they appear in the trial court.

I agree that, in the absence of a showing to the contrary, it is presumed that the county officers performed their duties at the time and in the manner provided by law, as held in the cases cited in the opinion. That presumption, however, remains only until there is a showing to the contrary, and in this instance there was an ample showing to the contrary.

Mr. Justice Cochran, in the case of Stumpf v. Montgomery, 101 Okla. 257, 226

Pac. 65, 32 L. R. A. 1490, cited with approval a very succinct statement of the rule of presumptions:

" 'Presumptions * * * may be looked upon as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts'."

The rule on presumptions as universally held by the courts and as clearly stated in Wigmore on Evidence, par. 2491, was adopted by this court in the Stumpf Case. This court there said:

"The distinction between presumptions 'of law' and presumptions 'of fact' is in truth the difference between things that are in reality presumptions and things that are not presumptions at all. A presumption, as already noticed, is in its characteristic feature, a rule of law laid down by the judge, attaching to one evidentiary fact certain procedural consequences as to the duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the legal consequence attached to it. But, the legal consequence being removed, the inference, as a matter of reasoning, may still remain; and a presumption of fact, in the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact, regarded as not having this necessary legal consequence. 'They are, in truth, but mere arguments' and depend upon their own natural force and efficacy in generating belief or conviction in the mind. They have no significance so far as affects the duty of one or the other party to procure evidence, because there is no rule of law attached to them, and the jury may give to them such force or weight it thinks best, just as it may to other evidence. So long as the law attaches no legal consequences in the way of a duty upon the opponent to come forward with contrary evidence, there is no propriety in applying the term 'presumption' to such facts, however great this probative significance. The employment here of the term 'presumption' is due simply to historical usage, by which 'presumption' was originally a term equivalent, in one sense, to inference, and the distinction between presumption of fact and of law was a mere borrowing of misapplied continental terms. There is in truth but one kind of presumption; and the term 'presumption of fact' should be discarded as useless and confusing. Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the

contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the judge's hands, free from any rule. It is therefore a fallacy to attribute an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary." Stumpf v. Montgomery, supra.

"A 'presumption', in the true sense, that is, a 'legal presumption', is in its characteristic feature a rule of law laid down by the judge and attaching to evidentiary facts certain procedural consequences as to the duty of production of other evidence by the opponent. If the opponent does offer evidence to the contrary, the presumption disappears, and the case stands upon the facts and the reasonable inferences to be drawn therefrom." Kramer v. Nichols-Chandler Home Building & Brokerage Co. et al., 103 Okla. 208, 229 Pac. 767.

"This inference or presumption stands only so long as there is an absence of proof on that question. When facts are established by proof which repel and contradict the inference or presumption previously indulged, such inference or presumption ceases to exist as a probative element in the case. Stumpf v. Montgomery, 101 Okla. 257, 226 Pac. 65, 32 A. L. R. 1490; Kramer v. Nichols-Chandler Home Building & Brokerage Co. et al., 103 Okla. 208, 229 Pac. 767; McCullough v. Harshman, 99 Okla. 262, 226 Pac. 555." St. John v. Ivers, 124 Okla. 215, 255 Pac. 706.

It is the well-settled rule in this state that the judgment of the trial court in a law action where a jury is waived will not be reversed upon appeal if there is any competent testimony reasonably tending to support the same. Schaff v. McGuyre, 87 Okla. 41, 208 Pac. 263, and Moses v. Harris et al., 111 Okla. 54, 237 Pac. 591. In the latter case in the first syllabus it is said:

"On a challenge to the sufficiency of the evidence to support the verdict, the question presented on appeal is, admitting the truth of all the evidence of the plaintiff, together with such inferences and conclusions as may reasonably be drawn therefrom eliminating all evidence of defendant in conflict with plaintiff's evidence, and all opposing inferences, whether there is any competent evidence tending to support the verdict against defendant."

See, also, Baker v. Jack, 112 Okla. 142, 241 Pac. 478, and Beams v. Step, 116 Okla. 291, 244 Pac. 775.

There are two questions for this court to determine: First, is there any competent testimony tending to support the judgment of the court that the rates of levies were not lawfully fixed? Second, is there any competent testimony tending to support the judgment of the court that the rates of levies were not lawfully certified to the county assessor?

Under the provisions of section 9695, C. O. S. 1921, the board of county commissioners is required to meet on the first Monday in July of each year and "make in writing a financial statement showing the true fiscal condition" of the county "as of the close of the previous year, and an itemized statement of estimated needs and probable income from sources other than ad valorem tax" of the county "for current expense for the current fiscal year." The financial statement "shall be sworn to as being true and correct." That financial statement and estimate "as prepared in accordance with the provisions of this section shall be published in some newspaper published" in the county or posted where there is no paper published therein. "Said estimates so made out and published * * * shall, as soon as completed, be certified to the excise board of the county, together with an affidavit attached, showing the publication or posting thereof. * * *" This section prescribes the duties to be performed by the board of county commissioners and the manner and time for the performance thereof.

Under the provisions of section 9698, C. O. S. 1921, the excise board shall meet on the last Saturday of July "for the purpose of examining the financial statements for the previous fiscal year as submitted by the county", and "ascertaining the true fiscal condition" thereof "at the close of such year; and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified" by the county, and "determining the items and amounts for which appropriations shall be made for such year. * * *" "When the excise board shall have examined, revised and adjusted the items of the respective estimates" of the county, "and shall have ascertained in separate items the needs" of the county, "if the same sha'l be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

This section prescribes the duties to be performed by the excise board and the manner and time for the performance thereof

and authorizes the excise board to make appropriations for county purposes.

Under the provisions of section 9699, C. O. S. 1921, after having "ascertained the total assessed valuation of the property taxed ad valorem in the county," and after having "computed the total of the several items of appropriations for current expense and sinking fund purposes for the county" "with ten per cent. (10%) added thereto for delinquent tax, they shall thereupon make the levies therefor," in the manner therein provided. The plain intent of the provision is to require a computation by the excise board which, when followed, results in the determination of the rates of levy without further action. There is nothing therein that can be construed to give the excise board any discretion to determine the rates of levies other than by the computation required.

This section prescribes the duties to be performed by the excise board and the manner and time for the performance thereof, in computing the rates of levies, and as a condition precedent thereto requires the excise board to ascertain the assessed valuation of the county.

Under these statutes the determining question is not whether the financial statement and estimate was published and is not, whether proof of publication thereof was filed with the county clerk. The determining questions here are, Was the instrument certified to the county excise board properly prepared, and did it have attached an affidavit showing the publication thereof? If that instrument was not properly prepared, or if it did not have attached thereto an affidavit showing the publication thereof, the statute has not been complied with.

The excise board has no lawful means of knowing whether or not the financial statement and estimate has been published, except as provided by the statute. The knowledge of the county clerk that it has been published is not legal information to the excise board. Every member of the excise board might know that it had been published, but the excise board as a body may acquire that information only in the manner provided by the statute. If the statute has not been complied with, then the excise board is without authority of law to proceed and its action in making the appropriations and fixing the rates of levies is void for want of authority so to do. The authority to make the appropriations and fix the rates of levies is a certificate of a proper financial statement and estimate, together with an affidavit attached showing the publication thereof.

The fact that this case involves a county tax levy does not and cannot change the construction of the statute requiring a certification of the publication. The statute applies to all municipalities. As an instance thereof the publication may be filed with the town clerk. In order for the excise board to have the benefit of that publication it would have to be certified to the excise board, and the fact that it was on file in the office of the town clerk would be of no benefit to the excise board. Nor would it be of any benefit to the excise board that the proof of publication was on file in the office of the county clerk. The statute requires that the publication be certified to the excise board. That statute is mandatory, and there is no showing in this case of any attempt to comply with it.

Section 9695, supra, requires that the financial statement be sworn to as being true and correct. This provision has never been construed, but a similar provision was construed by this court in Nelson v. Oklahoma City & Western Ry. Co., 24 Okla. 617, 104 Pac. 42, where the failure of the township board to sign was held to be

"Not a mere irregularity, but there was an absolute and utter failure on the part of the township officers to comply with the requirements of the statute."

There is a similar holding in the case of Prince v. St. Louis & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106, wherein this court said:

" * * * If such an election was held, section 9708, C. O. S. 1921, required the school board, when their estimate was approved by the voters, to attach a 'certificate of the vote', and we cannot construe this to mean merely a certificate 'of the result'. That is, that the vote showed a majority in favor of the increased levy."

Plaintiff produced the following witnesses:

R. E. Garnett, a certified public accountant, testified that on the 1st day of May, 1928, he examined the financial statement and estimate of needs for the fiscal year in question, and at that time it had not been signed. He was handed the financial statement and estimate which was admitted at the trial to be the original and which at that time contained certain signatures, and he testified that that instrument did not contain those signatures on May 1, 1928. On cross-examination he was asked as to

how he knew the instrument he examined was the original instrument, and he answered, "I saw the original that Mr. Breeding (the deputy county clerk) said was the original estimate."

T. H. Marshall, a public accountant, testified that on the 1st day of May, 1928, the instrument was not signed and that he identified it by the mark he made upon it on the date of his examination.

Hollis Haney, a deputy county clerk of Oklahoma county, who began work as such on January 1, 1928, testified that she took what was supposed to be the original financial statement and estimate to the various officers of the county excise board for their signatures after January 1, 1928; that she did not remember the exact date.

John Rogers, the State Examiner and Inspector, as a part of the duties of his office to examine the tax levies and in order to answer a question of the county treasurer of Oklahoma county involving the highway and sinking fund, during the latter part of April or the 1st of May, 1928, examined the instrument. He asked the clerk's office for the original instrument. The instrument exhibited to him was not signed. On cross-examination, when asked if the instrument he saw could not have been a copy, he said: "Sure. I asked for the original." He was asked who delivered this instrument to him, and he answered, "Mr. Breeding, if I remember rightly, or probably it was some girl that first brought the copy, and I asked Mr. Breeding; told him I wanted the original copy." After finding that the instrument had not been signed, he remarked that it should be signed. He was asked to whom this remark was made, and he answered: "I think Mr. Breeding was there. I couldn't be positive, but I think he was. I made the remark it should be signed."

The county treasurer testified that the financial statement and estimate of needs was signed sometime in the spring of 1928 and somewhere along about May 1st; that it was brought to him for signature by Mrs. Hollis Haney. On cross-examination he testified that it was immediately after a controversy arose over the question of whether or not sinking fund coupons could be paid out of gasoline tax. The coupons were past due at that time.

In rebuttal the plaintiff recalled the witness Garnett, who testified that on May 1, 1928, he examined the original certificate of rates of levies to the county assessor, and

that it was signed by the county clerk and by none else.

The witness Marshall was recalled and testified that he asked Mr. Breeding for the original record of the excise board pertaining to the fixing of the rates of levies on May 1, 1928, and that Mr. Breeding exhibited the same to him and that it was not signed by the excise board.

Ada Belle Jackson, a deputy in the county treasurer's office, testified that sometime in May, 1928, she went to the county clerk's office to look at the financial statement and estimate for the fiscal year in question and found it, and that it was not signed. She made a pencil notation on it by reason of which she recognized the same. This occurred when she was looking up the highway levy.

The plaintiff offered in evidence a photostatic copy which he contends is of the original financial statement and estimate of needs of Oklahoma county for the fiscal year in question as the same appeared on May 1, 1928. The same was admitted in evidence. That instrument shows that the certificate of correctness of the financial statement was neither dated, signed, attested, nor verified and that the seal of the county clerk was not impressed thereon; that the certificate of correctness of the estimated needs was neither dated, signed, nor attested and that the seal of the county clerk was not impressed thereon; that the certificate to the county excise board was neither dated nor signed; that the affidavit of publication of the financial statement and estimate was not completed, signed, or verified, and that the certificate of the rates of levies was not dated or signed.

The defendant contends that the photostatic copy of the financial statement and estimate introduced in evidence by the plaintiff was not a photostatic copy of the original instrument. The defendant produced the witness Breeding, who produced an instrument. The attorney for the defendant then said:

"I will say this instrument is the instrument prepared by the proper officers in the manner and form prescribed by law in making up the financial statement of Oklahoma county."

That instrument was offered and received in evidence as exhibit "F," and a photostatic copy thereof is shown in the casemade. An examination of that instrument discloses that the certificate of correctness of the financial statement was dated at

Oklahoma City on July 23, 1927. It is s-gned by the three members of the board of county commissioners and by the county clerk and is sworn to under that date before the county judge. It bears' no seal. The certificate of correctness of the estimate is dated at Oklahoma City on July 23, 1927, and is signed by the three members of the board of county commissioners attested by the county clerk, and his seal is thereto attached. The certificate certifying the financial statement and estimate to the county excise board is dated at Oklahoma City July 23, 1927, and is signed by the three members of the board of county commissioners. The affidavit of publication is not filled out and is not signed or sworn to. The certificate of the excise board approving the estimate and making the appropriation is not signed or sworn to. The certificate of the levies is not signed or sworn to. The blank for the computation of the levies was never completed and is as prepared by the printer without signatures. A statement of the rates of the several levies is incorporated, but there is no signature thereto.

I do not think it necessary to determine whether the exhibit offered by the plaintiff or the exhibit offered by the defendant is the original. For the purpose of determining this case I concede that the exhibit offered by the defendant is the original.

The first question I will consider is, When was the original signed by the board of county commissioners? Upon its face it purports to have been signed on the 23rd day of July, 1927, in the three places requiring the signature of the board of county commissioners. If that is true, then the board of county commissioners completed its financial statement and certified to its correctness on the 23rd day of July, 1927. It then made its estimate of probable needs for the ensuing fiscal year and certified the correctness thereof on the 23rd day of July, 1927. It then certified the financial statement and estimate to the excise board on the 23rd day of July, 1927. It is possib'e that that is what happened, but I desire to call attention to the fact that the certificate of the board of county commissioners certifying the financial statement and estimate to the county excise board contains the following statement:

"The said statement and estimate was duly published as required by law in a newspaper published in said county. Proof of such publication is herewith submitted.'

No proof of publication was therewith submitted, and it is nowhere contended that any proof of publication was submitted to the county excise board. The statement that the publication had been made as required by law could not be true for the financial statement and estimate could not have been published before they were completed, and according to that instrument they were not completed until the 23rd day of July, 1927. If that instrument is correct, then the instrument was comp.eted and published on the same date, which is impossible. The instrument would not be completed on July 23, 1927, be published as required by law, and then be certified on July 23, 1927, with proof of publication attached.

The opinion is based on a presumption that the county officers did their duty, and that under that presumption the notice was published as required by law. In the oral argument in open court on the hearing of the petition for rehearing, the question was asked the attorney for the defendant whether or not the financial statement and estimate were in fact published. The fact that these certificates were dated the same date prompted the question. The assistant county attorney produced an instrument which he said was the proof of publication and in open court stated that the financial statement and estimate were pub.ished on the 29th day of July, 1927, and that the proof of publication was filed in the office of the county clerk on July 30, 1927.

From that statement I now find that my conclusion as to impossibility of correctness is warranted and that it was physically impossible for the board of county commissioners to certify to the county excise board the financial statement and estimate on the 23rd day of July, 1927, and accompany the same with proof of publication when the publication is admitted not to have been made until July 29, 1927, and proof of publication not made until July 30, 1927. It is apparent that the opinion is based on a presumption as to the facts which fails in the light of the admitted facts.

To follow a presumption that a proof of publication was certified on July 23rd, when the publication was not made until July 29th, is further than I care to go. The execution of the three certificates on the same date and' the apparent error therein show that the opinion should be withdrawn and a new opinion substituted therefor.

It is now apparent that the certificate of the board of county commissioners, as it appears in what the defendant says is the

original instrument, was erroneous in so far as it stated that the publication had been made at that time and that proof of publication was therewith submitted.

I think this record shows that this certificate was not signed until about May, 1928, as testified to by the plaintiff's witnesses. I must so conclude or find that the county commissioners deliberately certified to a false statement as to the publication. There had been no publication at that time and proof of publication was not therewith submitted and could not have been therewith submitted for the reason that there had been no publication.

Since the financial statement and estimate were not lawfully certified to the excise board, the excise board was without any authority to fix the rates of levies, and the levies are void.

But there is another reason why the levies are void. The instrument offered by the defendant as the original instrument shows that the same has not been signed by any member of the excise board. Let us consider for a moment the duties of the excise board after the financial statement and estimate is certified to it. The excise board must examine the financial statement for the previous fiscal year and ascertain the true fiscal condition thereof at the close of the year. The blank provided by the State Examiner and Inspector to show the performance of that duty by the excise board was never signed by any one. The excise board must examine the statement of estimated needs for current expense purposes for the current fiscal year as certified to it. The form of certificate as prepared by the Examiner and Inspector to show the performance of that duty was not signed. The excise board must determine the items and amounts for which the appropriation shall be made for the year. There is nothing to show that that duty was performed, and the blank provided for that purpose was not signed. The excise board is authorized to make appropriations for the needs of the municipality, but before it may lawfully do so it must have examined, revised, and adjusted the items of the estimates and ascertained in separate items the need thereof, and must have determined that the same are within the limits for current expenses. The blank provided for that purpose by the State Examiner and Inspector was not signed. Before the rates of levies may be fixed, the excise board must ascertain the total assessed valuation of the property taxed ad valorem.

The blank provided by the State Examiner and Inspector for that purpose was not signed. The excise board is required to total the items of appropriation for current expense and sinking fund purposes for the county. It shall then add ten per cent. thereto for delinquent taxes. It shall then deduct from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years together with the amount of the probable income of each from all sources other than ad valorem taxation, provided that in no event shall the amount of such estimated income exceed the annual collection from such sources for the previous fiscal year. The State Examiner and Inspector furnished these county officials with a blank to show that computation. They did not use it and it was not filled out or signed. Section 9699, supra, provides a complete procedure to be followed by the excise board when it proceeds to fix the rates of levies. The procedure is mandatory. The following of that procedure results in a determination of the rates of levy and requires no motion. A motion to fix a rate of levy is a frivolous thing. Excise boards have no authority to fix the rates of levies by popular vote among their members. Their authority is to follow the provisions of the statute and make a computation which results in showing what the rates of levies shall be. An examination of the minutes of the excise board discloses that there was no attempt made to comply with the provisions of this statute, and if the rates of levy were ever fixed they were fixed by motion and vote of the members of the excise board without any computation to determine the rates of levies required.

That the rates of levies may be fixed only by the computation required by statute is shown by the reasoning in the cases of Going, Co. Treas., v. Atchinson, Topeka & Santa Fe Ry. Co., 88 Okla. 283, 213 Pac. 84; Going, Co. Treas., v. Carter Oil Co., 88 Okla. 222, 214 Pac. 922; Atchinson, Topeka & Santa Fe Ry. Co. v. Myers, Co. Treas., 114 Okla. 240, 246 Pac. 395; Hinds v. Dalton, Co. Treas., 90 Okla. 239, 217 Pac. 168; Bristow Battery Co. v. Payne, 123 Okla. 137, 252 Pac. 423, and Albrecht v. Jones, 130 Okla. 277, 267 Pac. 270.

There is an abundance of competent testimony to support the finding and judgment of the trial court that the rates of levies were not lawfully fixed, and there is no competent evidence that they were lawfully fixed.

Under the provisions of section 9699, supra, after making the appropriations,

"The rates of levy for current expense purposes and sinking fund purposes shall be separately made and stated and the revenue accruing therefrom shall be known as the general fund and sinking fund, respectively; and shall, when so made, be certified to the officer whose duty it is to make up the tax rolls. The secretary of the excise board shall immediately certify the appropriations so made by the excise board to the clerk or other issuing officer of the municipality for which the same is made."

This section prescribes the procedure for certifying the rates of levies to the county assessor and the procedure for certifying the appropriations to the county clerk. It prescribes who shall certify the appropriations, but leaves in doubt who shall certify the rates of levies.

It is argued that the certification of the rates of levies to the county assessor may be by the county clerk as ex officio secretary of the excise board. We cannot so construe section 9699, supra. Immediately after requiring the certification of the rates of levies to the county assessor, with no provision as to who shall perform that duty, the section required the secretary of the excise board to certify the appropriations to the issuing officer of each municipality. If both of these duties were intended to be performed by the secretary of the excise board, there is no reason why the Legislature should not have so stated.

The ambiguity in section 9699, supra, as to who shall certify the rates of levies to the county assessor is removed when we consider section 9672, supra. That section deals with the county assessors, and it is that section that directs the county assessor to make out the tax rolls. The section provides:

"The county excise board shall certify all levies to the assessor and he shall proceed, on receipt of the same, to make out the tax rolls with complete abstract, showing the total amount of personal, real and corporation taxes, as now provided by law, and when complete he shall file same, with the county treasurer, not later than October first, and a true and correct abstract of same with the county clerk, and the county clerk shall charge the county treasurer with the amount contained in said abstract."

It is in strict harmony with section 9699, supra, and when the two sections are construed together it is apparent that the excise board shall not only fix the rates of levies, but shall certify them to the county assessor.

My attention was not called to section 9672, supra, until the petition for rehearing was filed herein. I cannot make myself believe that this court has legislative authority. The Legislature has provided how the rates of levies shall be certified to the county assessor. This court has no authority to change that method.

Mr. Breeding, a deputy county clerk, testified that he was the clerk of the excise board and kept the minutes of the meetings; that he certified the rates of levies to the county assessor to be spread upon the tax rolls as directed by the excise board. There is no other evidence of such direction. He was asked if he had a record of the certificate that he delivered to the county assessor, and he produced an instrument. Objection was made and the plaintiff's attorneys demanded that the original be produced. He then testified that that was the original certificate delivered to the county assessor and that he delivered the same to the county assessor. That certificate, according to that witness, was signed while the board was not in session and by taking it around to the individual officers. An examination of that instrument discloses that it was signed by the county judge, county clerk, county superintendent, county assessor, and county attorney. His attention was again called to the instrument and he was asked by Mr. Stater: "Q. This is the original copy?" and he answered, "This is the one we have got on file in our office. Q. Exhibit E is the official copy, is it? A. Yes, sir." After testifying that it was signed in the individual offices of the various members, he was asked: "Q. How many did you take?" and he answered, "I really don't know," and he was asked, "Where are the others?" and he answered, "I really don't know."

This testimony shows only one thing and that is that the only instrument of which the witness knew anything was the one on file in the office of the county clerk. It is true that he testified as a conclusion that he had certified the rates of levies to the county assessor, but he later stated that the only signed instrument containing a statement of the rates of levies, of which he had any knowledge, was that on file in the office of the county clerk, and that he did not know what became of the others. This testimony cannot be construed to show that a copy of the rates of levies was delivered to the county assessor.

The deputy county assessor produced the instrument by virtue of which the taxes

were extended upon the tax rolls and which she said were the rates of levies certified by the excise board. An examination of that instrument shows that no member of the excise board signed it. Attached to it is a certificate reading as follows:

"State of Oklahoma, Oklahoma County, ss.

"I, J. W. Berry, county clerk in and for said county and state, and secretary of the excise board, do hereby certify that a written certificate certifying the amount of the levies made for the county of Oklahoma, and each subdivision thereof, including all municipalities, townships and school districts, was filed in the office of the county assessor of said county and state on the 12th day of November, 1927, and is a matter of record.

"I further certify that said certificate may be found for public inspection in the office of said county assessor.

"Given under my hand and official seal this 12th day of November, 1927.
(Seal of County Clerk.)"

"J. W. Berry, County Clerk and Secretary of the Excise Board of Oklahoma County, State of Oklahoma. C. C. Breeding, Deputy."

—but that is not a certificate to the county assessor of the rates of levies. It is only a certificate that the county clerk had certified the amount of the levies to the county assessor. The statute requires the excise board to certify the rates of levies to the county assessor and the instrument delivered to the county assessor as his authority to extend the taxes upon the tax rolls was not signed by any member of the excise board and was not certified to the county assessor. It had attached a certificate showing, not the doing of the thing required by the statute, but stating that the thing required by the statute to be done had been done.

If we should adopt the contention of the defendant that the rates of levies may be certified to the county assessor by the county clerk as the secretary of the county excise board and apply that rule, the defendant must fail because the instrument delivered does not contain the signatures of the members of the excise board and does not in any event constitute a certified copy. The certificate attached only purports to be a statement of what the county clerk had done, that is, that he had theretofore delivered to the county assessor a written certificate certifying the amount of the levies. The certificate of the county clerk contains the following:

"I further certify that said certificate may be found for public inspection in the office of said county assessor."

—but the instrument exhibited by the deputy county assessor is not a "written certificate certifying the amount of the levies made for the county of Oklahoma," and there is no other evidence thereof.

An examination of this record clearly discloses that Mr. Breeding mixed the papers and delivered to the county assessor the instrument that should have been filed in the office of the county clerk, and filed in the office of the county clerk the instrument that should have been delivered to the county assessor. I can find no other explanation of these two instruments.

The plaintiff in error vigorously contends that exhibit "E" is a certificate of the levies and that it is correct and signed by more than a majority of the members of the excise board, but the evidence shows that that instrument was filed in the office of the county clerk and not in the office of the county assessor, to which the rates of levies should have been certified.

On this point the determining question is not whether the certificate of the rates of levies was signed, and not whether it was filed in the office of the county clerk as the secretary of the excise board. The controlling question is, "Were the rates of levies certified to the county assessor?" There is in this record no competent testimony to show that the rates of levies were certified to the county assessor. The only evidence thereof is the statement of the witness Breeding, who immediately thereafter destroyed the force of his statement by producing an instrument that contradicted his statement. Certainly we cannot depend upon the memory of public officials to determine whether or not official acts have been performed, and no better evidence is required of the danger thereof than the evidence of the witness Breeding in this case. The memory of man is too fickle to be relied upon in matters of public importance.

"A written record of the levy is necessary, especially where required by statute. In every case of the levy of taxes, whether they be voted by representative bodies or by the people, it is requisite that the action which authorizes the levy or determines anything of importance concerning it should appear of record. 'Every essential proceeding in the course of a levy of taxes,' it is said in one case, 'must appear in some written and permanent form in the record of the bodies authorized to act upon them. Such a thing as a parol levy of taxes is

not legally possible under the laws.' And in another, in which the action of a convention of town delegates in voting a county tax was in question, 'a record of the doings of such a convention is the only evidence to show a county tax duly granted.' The importance of the record is seen in the fact that it is intended by the law not only for evidence but for the only evidence of action taken; and that when properly made up its recitals are conclusive; evidence to disprove them not being receivable." Cooley on Taxation (4th Ed.) vol. 3, sec. 1036.

"Every essential proceeding in the course of a levy of taxes must appear in some written and permanent form in the records of the bodies authorized to act upon them. Such a thing as a parol levy of taxes is not legally possible under our laws." Moser v. White, 29 Mich. 59.

"In Moore v. Cooke, 40 Iowa, 290, it was held that a valid levy cannot be established by parol, and that if no record of a levy can be found in the proper office, the presumption that there was a levy arising from the deed is overcome. To the same effect is Early v. Whittingham, 43 Iowa, 162." Prouty v. Hallman et al. (Iowa) 21 N. W. 675.

"He (chairman of the board) testified that the resolution was marked 'adopted,' and delivered to the county auditor. The resolution is not, however, among the records and files in that office, and, if it ever existed in point of fact, it cannot now be found, nor does the certified 'case' disclose whether the resolution appeared in the published proceedings of the board. The board of equalization is created by statute, with specially defined duties and responsibilities, and is of limited jurisdiction. It can exercise no authority except such as is conferred by the statutes, and is confined in the performance of its duties to a reasonably strict observance of the statutory requirements; and any substantial departure therefrom vitiates its action. * * * The tax proceedings must stand, or fall by the record made in compliance with statutory requirements. Cooley on Taxation, 313. Hadley v. Chamberlin, 11 Vt. 618; Hecht v. Boughton, 2 Wyo. 385; Taylor v. Henry, 2 Pick. 397; Halleck v. Boylston, 117 Mass. 469. * * * So we conclude that the records must speak for themselves, and cannot be contradicted or impeached or supplied, where silent, by parol or extrinsic evidence." State v. Crookston Lumber Co. (Minn.) 89 N. W. 173.

"The levy is a very essential step in the imposition of a tax. In McCready v. Sexton & Son, 29 Iowa, 356 (389), it is likened to a judgment in rem. It would be a dangerous principle to adopt, that proof of such fact may rest in parol, notwithstanding the fact that the statute positively directs that the memory of it shall be preserved by a record in the proper book." Moore v. Cooke, 40 Iowa, 290.

"'* * * For all that appears therein, these taxes, if ever directed by anyone, may have been by private individuals not vested by law with the authority to impose a burden upon their neighbors' property and their own, and denominate it a 'tax'; that the presumption of the legality of the taxes being overcome by introducing the certificates, and showing their insufficiency, they must fall, as no proof is offered by the Auditor General giving jurisdiction to impose them; that he must assume the burden which the law throws upon him; that every essential proceeding in the levy of taxes must appear of record; citing Moser v. White, 29 Mich. 59; Sinclair v. Learned, 51 Id. 335; Case v. Dean, 16 Id. 12; Peninsular Iron Co. v. Township of Crystal Falls, 60 Id. 510; Sage v. Auditor General, 72 Id. 638; Gamble v. Auditor General, 78 Id. 302." Auditor General v. McArthur, 87 Mich. 457.

"The proofs of the adjournments rests in the testimony of the presiding officer of the board, and the minutes of a stenographer (not official) which were transcribed long after the record of the action of the board in this matter was made. We do not think that this case is distinguished from the Baily Case, (139 Mich. 495, 102 N. W. 1033), and hold that the certification is not sufficient, by reason of uncertainty. We said in that case: 'We cannot presume that the review certified to have occurred October 6th was under the notice for September 19th. The record made by the board does not warrant such presumption.' To hold otherwise would be permitting the levy and assessment of taxes to be founded upon parol. This cannot be done. 1 Cooley on Taxation (3rd Ed.) p. 576; Moser v. White, 29 Mich. 59; Rogers v. White, 68 Mich. 10, and cases cited." Delray Land Co. v. Twp. of Springwells (Mich.) 112 N. W. 1132.

"Proceedings by which taxes are voted cannot be left in parol; and, if the records do not disclose the fact that the proper authority voted to raise money to defray the expenses of the township, taxes levied for that purpose by the supervisor would be illegal, and no presumption arises, in the absence of such vote appearing upon the record, that it was had or taken." Williams v. Mears et al. (Mich.) 27 N. W. 863.

"When any part of a tax levy does not appear by the record to have been duly authorized, a sale of land for its proportionate share of such levy is invalid." Rogers v. White (Mich.) 35 N. W. 799.

At most, the evidence shows that the deputy county clerk delivered to the county assessor a list showing the rates of levies, which list was not certified to be true or correct or that it was the action of the excise board. The statute uses the word "cer-

tify." The rates of levies are required to be **certified** to the officer whose duty it is to make up the tax rolls. The meaning of the word is evident. Mere delivery is not sufficient, for the one who made the delivery might die or surrender his office or forget. We must give the word "certify" such meaning as will require a record to be made that will not depend upon the memory of the individual, his holding of public office, or his life. The word "certificate," as here used, can mean only that the rates of levy must be furnished to the county assessor, accompanied by a certificate showing what they are. The State Examiner and Inspector has very kindly, in accordance with his duty, provided a form for that purpose in which it is said:

"We, the undersigned members of the excise board of said county and state, do hereby certify that the following are the levies for Oklahoma county and each subdivision thereof, including the municipalities, townships and school districts, for the year 1927-1928, as shown by the minutes of the meetings. * * *"

The excise board did not sign that certificate, and it appears in what the defendant says is the original instrument of this case, unsigned and of no effect.

I take the same view taken by the State Examiner and Inspector when he prepared those forms, and that is that sections 9672 and 9699, supra, require the rates of levies to be certified by the members of the excise board.

In the year 1899, the territorial Supreme Court had before it in Frazier v. Prince, 8 Okla. 253, 58 Pac. 751, the statutes with reference to the delivery of the assessment rolls to the county clerk and the procedure therefor. The court said:

"The law is plain, and there can be no doubt about the intent of the Legislature; but is this statute mandatory or only directory? * * * The provisions of section 5618 are mandatory and not directory. * * * Many other authorities could be cited, but we deem it unnecessary, as the textbooks, as well as the authorities, show beyond any question that where the statute provides that a warrant shall issue from the county clerk to the treasurer, such warrant must issue as directed by the statute. A sale of real estate, without a warrant having been issued, where one is required, is absolutely void and the purchaser takes nothing by virtue of such sale. Our statutes have provided how land shall be assessed, and how it shall be sold; and there must be a substantial compliance with all the requirements of the statute or a sale will convey no title. It is the duty of the county clerk

to attach to the tax list his warrant, directing the county treasurer to collect the taxes. It is the warrant which clothes the treasurer with authority. * * *"

There was attached to the tax rolls a certificate which, with the exception of the year, is the same as that set out in the opinion by the same court in Morrow v. Smith, 8 Okla. 267, 61 Pac. 366, as follows:

"Territory of Oklahoma, Canadian County, ss.

"I, W. J. Clark, county clerk of said county and territory, do hereby certify that the attached tax rolls contain a true and correct copy of the tax rolls of Canadian county, Oklahoma Territory, for the year 1894.

"In witness whereof, I have hereunto set my hand and affixed the seal of my office, this 31st day of December, A. D. 1894. W. J. Clark, County Clerk."

In the latter case the court said:

"It is true the statutes provide that 'No informality in the foregoing requirements (referring to the section of the statutes which directs the issuance of a tax warrant) shall render any proceedings for the collection of taxes illegal.' (Section 5631, Statutes Oklahoma 1893.) But there is a great deal of difference between an informality in a tax warrant and the total absence of any warrant at all. The certificate attached to the tax list was not a warrant; there was no direction to the treasurer to collect the taxes contained in the list as required by the statutes.

"It is true that the act of the county clerk in issuing the warrant is a ministerial duty and not a judicial one; so is the issuing of an execution or other writ by a clerk of a court a ministerial act, but the sheriff must be armed with the proper writ before he can sell property to satisfy a judgment. Likewise, before a county treasurer can legally sell real estate for taxes, he must be armed with the warrant of the county clerk, and if he sells real estate without such warrant, the sale, and any deed issued by him in pursuance thereof, will be absolutely void, and the purchaser will acquire no interest in the land. * * *"

To the same effect was the holding in Mattocks v. McLain Land Co., 11 Okla. 435, 68 Pac. 501, which holds that unless the warrant is attested by the official seal of the clerk, the sale of the real estate thereafter is illegal. Attention is called to the fact that the alleged certificate in the case at bar contained no seal.

We quote from Nelson v. Oklahoma City & Western Ry. Co., supra, as follows:

" 'Where the statute requires a series of acts to be performed before the owners of

the property are properly changeable with the tax, such acts are conditions precedent to the exercise of the power to levy tax, and all the requirements of the statute must be complied with, or that tax cannot be collected.' * * *

" 'Executive and ministerial officers enforce the tax laws; but, in doing so, they must keep strictly within the authority those laws confer, and they cannot add to or vary, in the slightest degree, any tax lawfully levied. They neither have nor can have a roving commission to levy and collect taxes from the people without authority of law, but (they) can only do so in the manner prescribed by the law, which would be the governing rule for their conduct in levying taxes * * * in all cases.' * * *

" 'Courts have no rightful authority, by mere construction, to aid the defective execution of a power given or created exclusively by statute, nor dispense with those formalities which the Legislature has seen fit to provide to secure its due execution.' "

To the same effect is Prince v. St. Louis & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106.

We cite only a few of such holdings from other states:

The power to tax "must be clearly and expressly given by statute, and if the Legislature in conferring the power imposed conditions upon which it may be exercised, such (conditions) must be observed before the power can be lawfully exercised." State ex rel. v. Railway Co., 87 Mo. 236.

"The assessment of taxes is a purely statutory proceeding, and must ordinarily be pursued with technical strictness, in order that the acts of the assessors may have any validity. No tax can be sustained as valid, unless it is levied in accordance with the letter of the statute." Hough v. City of North Adams (Mass.) 82 N. E. 46.

"We must bear in mind that all the powers conferred upon the boards of supervisors, whether express or implied, are to be exercised 'under such limitations and restrictions as are prescribed by law.' Under the power conferred to levy taxes for county purposes, it might be, in the absence of other legislation, plausibly contended that the power to collect the taxes so levied, without which the levy would be of no avail, would be implied as a necessary corollary of the express power conferred. Where, however, a power is conferred by statute, and the mode of its exercise is also prescribed, the mode prescribed is usually held to be the measure of the power. The whole course of proceeding, from the levy of the tax to its collection, is confided to certain officers designated by the statute, whose duties, and the time and manner of their discharge, are specified by law." House

v. Los Angeles County (Cal.) 37 Pac. 796.

"3. The statute under which the tax was voted (chapter 123 of the Laws of the Sixteenth General Assembly) provided what shall be certified by the clerks of the elections to the auditor as a condition precedent to the levy of the tax. The certificate must show 'the rate per centum of a tax voted, * * * the year or years during which the same is to be collected, and the time and terms upon which the same, when collected, is to be paid to the railroad company under the conditions and stipulations in the notice, together with an exact copy of the notice under which the election was held.' The certificate in this case shows the rate per centum of tax voted, but did not show the conditions provided in the statute except by reference to the notice of the election which is attached to an exhibit to the certificate, and referred to as constituting a part thereof. As the conditions are necessarily embraced in the notice, and as the notice is referred to as a part of the certificate, it is insisted by the appellant that the condicions are embraced in the certificate. There is certainly much force in this view, and we should be inclined to sustain it, but for the fact that the Legislature provided that the conditions shall be embraced in the certificate, and an exact copy of the notice be set out also. We cannot dispense with a legislative provision so clearly expressed, merely upon the ground that it seems superfluous. Besides, we are not prepared to say that it is superfluous. The certificate is to be recorded. It and the record are to become the evidence of the rights and obligations of the respective parties. We are inclined to think that the care evinced by the provision to guard against mistakes and accidents is not greater than the importance of the matter demanded." Minnesota, etc., Ry. Co. v. Hiams, and others (Iowa) 5 N. W. 703.

Section 9699, supra, was under consideration by this court in the case of Pitts v. First National Bank of Muskogee, 138 Okla. 284, 281 Pac. 133, and in construing the same Mr. Justice Lester, speaking for the court, said:

"Here it is seen that the excise board, after it has concluded its deliberation on the estimated needs for each municipality as relating to the general and sinking funds, * * * then certifies its findins to the officer whose duty it is to make up the tax rolls. No other board or person under the statutes is clothed with the power to certify to the officer whose duty it is to make up the tax ro'ls the financial needs of a municipality. There is no authority given to the officer whose duty it is to make up tax rolls to accept any estimate made by any person or board other than the excise boards of the respective counties."

The opinion quotes with approval Mr. Cooley (3rd Ed.) page 99, wherein he said:

"It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system, and, when properly understood, admits of no exception. And it is applicable with peculiar force to the case of taxation"

—and from section 9712, C. O. S. 1921, as follows:

"* * * And no levy for any purpose shall be valid unless made according to the provisions of this article, and any such illegal levy, and the collection of the tax thereunder may be enjoined at the suit of any taxpayer."

In Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912, this court said:

"Where property is impressed with a tax levy, such levy constitutes a lien thereon which is superior to every other claim, and therefore every safeguard should be used to protect the property of the citizen from an illegal and unwarranted tax levy. We cannot give approval to the language in the plaintiff's brief that 'because the defendant did not follow the provisions of the statute in regard to submitting its budget and estimate to the excise board, such failure was a mere technicality and no harm was thereby done.'"

In Atchison, T. & S. F. Ry. Co. v. Myers, Co. Treas., 114 Okla. 240, 246 Pac. 395, this court said:

"However, it frequently happens that a rule of law may at times operate in an impractical manner and a detriment to another; yet the courts cannot, on that account, strike down such established rule, and especially is this true in case of a statute which, standing alone, shows from the language employed therein its plain and manifest intention."

In Hines, Director General, v. Dalton, Co. Treas., 90 Okla. 239, 217 Pac. 168, this court said:

"The legislative intent is plain in both, the section relating to the State Equalization Board and the section relating to county excise boards. Both these statutes have been in force since 1909, and have been operative since said date, and the Legislature has seen no reason for changing them. And, aside from the rule that it is not the province of courts to inquire into the wisdom of the Legislature, we will say that we are unable to see the absurdity in the literal effect of such statutes which plaintiffs in error claim to see. The Legislature may have had a very wholesome purpose in view in making those provisions as they are. The court takes cognizance of the fact that the Legislature has made specific provision for putting the state and each county and subdivision thereof upon a cash basis, and by other laws has fortified against reckless incurring of indebtedness. The provisions of the statutes under consideration here are a part of the general scheme for maintaining the state and its municipal subdivisions upon a cash basis and preventing unjustifiable indebtedness.

"The literal significance of the respective sections of statute under consideration plainly shows the legislative intent. To give such sections a different interpretation would be to disregard the manifest intent of the Legislature."

In Oklahoma News Co. v. Ryan, Co. Treas., 101 Okla. 151, 224 Pac. 969, this court said:

"The Constitution confers no authority on a city to levy a tax, but the Legislature is authorized to confer this power. Section 9, art. 10, limits the amount of tax which may be authorized to be levied by the Legislature, and section 20, art. 10, prohibits the Legislature from imposing any tax for city purposes, but authorizes the Legislature by general laws to confer on the city the power to assess and collect such taxes. In the absence of legislative authority the city has no power to assess and collect a tax at all. * * * Since the authority to make the levy for city purposes must be granted by general laws, and since no levy can be made unless made under authority of a legislative enactment, the statutes above referred to must be construed as general laws or no authority for the city levy exists. * * *"

In Boardman Co. v. Board of County Commissioners, 136 Okla. 85, 276 Pac. 474, this court said:

"The one purpose was to safeguard the citizens and taxpayers of the state against the inadvertence, carelessness, the profligacy and the corruption of public officials charged with the handling of public moneys. That provision is subject to no exigency, pays no heed to convenience, expediency or emergency. It is sane, safe, unconditional, and, so far as human documents can be regarded, should be held sacred in its observance, interpretation and enforcement. Once this clear, protecting mandate is whittled away, reasoned around, or disregarded, for any cause, the chief guaranty of our orderly municipal progress, whether in state, county, city, town, township or school district, is threatened. This is no new law—

it has been with us since statehood. It is only a hardship to those who will not take the time to ascertain their rights, or to those who, knowing their rights, dare to gamble on a sympathetic jury, or a weak-kneed or indulgent court, to allow them a privilege which the people of our state have said no one shall enjoy."

The certification of the rates of levies is required, by section 9699, supra, to be made by the county excise board, section 9672, supra, to the county assessor, is the only authority of the county assessor to prepare the tax rolls. No authority is given to him to proceed until he had received that certificate. The record shows, not only that no certificate was given him by the excise board, but that no certificate was given him by anyone, and the instrument delivered to him by the county clerk is not and does not purport to be a certificate of the rates of levies.

At an early date in the history of our country and prior to the organization of our government, our forefathers believed and said that "Taxation without representation is tyranny." They incorporated into the Declaration of Independence, as one of the reasons for declaring the Colonies free and independent states, that taxes had been imposed without their consent. We saw fit to incorporate into our Constitution a provision that taxes shall be levied and collected by general laws, and that every act enacted levying a tax shall specify distinctly the purpose for which said tax is levied, and that no tax levied and collected for one purpose shall ever be devoted to another purpose. The Legislature, under that authority, has provided means and methods for levying and collecting taxes. Both the constitutional and legislative limitations have been irksome to taxing officials. Their duty to submit to the limitations prescribed and to conform to the requirements made has conflicted with the desire to secure funds for expenditure, and in many instances that conflict has been determined by them in favor of their desire and against their authority. As a result thereof taxpayers have protested the payment of the unauthorized tax and the courts have enjoined the collection thereof. Recognizing the disregard of limitations and the abuse of authority, the Legislature saw fit to prescribe a legal remedy by which payment of the unauthorized tax might be made under protest and recovery thereof had. This resulted in some taxpayers recovering the amounts paid, while others, less vigilant, sustained the loss. To remedy this condition, the people themselves, by initiative petition, adopted a procedure whereby the entire people might have relief against exorbitant and unauthorized taxation. After this legislative history, it certainly cannot be said with any persuasive power that our taxing officials are presumed to do their duty. The records of this court are full of instances showing absolute disregard of all duties.

Are the taxpayers to be subjected to the arbitrary action of the taxing officials? Is the executive branch to become the legislative? Are the taxing officia.s of this state to provide the manner and method of levying and collecting taxes? Or, is the division of authority intended by our people to be maintained, leaving with the legislative branch the power to provide the authority and the limitations and requiring the executive to execute as legislated? There is but one remedy for the people and that is through the medium of the courts. They exist to sustain the taxing officials when they perform their duties in accordance with the authority granted and within the limitations provided. They exist to protect the people from an abuse of that authority and from a disregard of those limitations.

Mr. Chief Justice Burford, speaking for the Territorial Supreme Court, in Kellogg v. School District No. 10, 13 Okla. 285, 74 Pac. 110, said:

"From the foregoing authorities it appears that there are two roads for us to choose from; one, a dim trail traveled by but few, and beset with many difficulties; the other, a broad, well-paved thoroughfare, numerously traveled, and leading to satisfactory results. Should there be any hesitation? We think not. It is the duty of those charged with the authority of establishing the principles which shall underlie and furnish the basis for our jurisprudence, to adopt those rules which, when applied to actual conditions, will bring about the best results to the community at large.

"The Supreme Courts of the states of Ohio and New York in vigorous language denounced the rule first adopted by the courts in those states, and which is the same as now prevails in Kansas, and declared that its effect had been to practically deny justice to the taxpayers, and subject them to official pillage and robbery without remedy or means of redress. We prefer to adopt the rule which permits the taxpayer to invoke the aid of the courts to protect himself from being burdened with taxes to pay illegal obligations, and to prevent the consummation of unauthorized acts by municipal officers. That the district court, sitting as a court of equity, will by injunction

restrain public officers from misappropriating public funds, or expending public funds at unauthorized places, or for unauthorized purposes, was settled by this court in Board of Education v. Taylor ex rel., 12 Okla. 286, 70 Pac. 792."

—and:

"The members of the school board for the district are trustees for the taxpayers of the district, and can only exercise such powers as are vested in them by statute, or such as are necessarily incident to those specifically conferred. In dealing with the revenues of the school district, the board must follow the mode prescribed by law, or in the absence of statute, the modes in common usage."

This court in Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, said:

"Taxes can be levied and the moneys arising therefrom expended only as provided by express law. More than once this court has said as much, but the already heavily burdened municipalities are constantly made to know that their administrative officers not unknowingly undertook to incur indebtedness entirely without the sanction of law. In the case at bar this was not only done, but the officers lent their aid to a species of prostitution of the court in an attempt to make their unauthorized contractual acts effective. The success of such attempts makes the courts parties to lawlessness; makes the citizens' property subject, not to the burdens of taxation the law through its enforcement machinery imposes, but to the arbitrary will of individuals who for the time being are in office. * * * The source of all revenue for governmental purposes is the people; the process of securing the revenue is taxation. There are necessarily officers of the municipalities who must officiate in the expenditure of public funds. There are necessarily officers who must determine how much money is necessary each fiscal year in each municipality, and for what purpose or purposes such moneys are necessary in order that a proper tax levy may be made upon the assessed valuation of the properties of the municipality subject to taxation. The officers who expend the money can expend only so much as is provided for the specific purpose for which the estimate is approved and the tax levy made."

That constitutional guaranty to the people, of protection from the actions of their officials, is extended by the Acts of the Legislature requiring the performance of certain things before a tax can be levied, in order that it may be determined from the records that there has been no violation of that limitation. That procedure requires the preparation of a verified financial statement of the fiscal affairs for the year and an estimate of the needs for the ensuing fiscal year. It requires that those instruments be published in order that the people may know, not only what has been done with their money, but what is intended to be done with their money. The financial statement and estimate is required to be certified to the excise board for its action, and there must be attached thereto and certified therewith an affidavit showing the publication thereof. The Legislature has seen fit to require that the excise board have, not only the financial statement and estimate, but proof that the people have been given notice by publication thereof. That procedure is definite and distinct as to how the excise board shall proceed to fix the rates of levies, and when those rates have been fixed and the valuation of the property has been approved, the excise board is required to certify the rates of levies to the county assessor that the county assessor may extend them upon the tax rolls preparatory to delivery to the treasurer for collection. The procedure outlined is simple and easy to follow. It is for the protection of the people and is a check upon the actions of the public officials. When it is followed, it results in a legal tax levy. When it is not followed, the attempted tax levy is void. The Legislature has seen fit to provide a method by which the taxpayer may pay the void tax and recover his money, and it is the duty of a court to direct a return of that money when it is shown that the procedure provided by the Legislature for the levying of a tax has not been followed.

This record shows an utter disregard by the county taxing officials of the requirements of our statutes which must be complied with before a tax levy can be made upon the property in this county. They had the blanks prepared by the State Examiner and Inspector. Printed on those blanks were instructions as to how they should be completed and the provisions of law with reference thereto were cited. The failure of the county officials to follow those requirements is without justification. They were the servants of the people. They had only such authority as had been given to them by the people through the acts of the Legislature. They attempted to take money from this plaintiff in the form of taxation without having complied with the things necessary to give them that authority. Plaintiff followed the remedy provided by the Legislature and paid his money under protest. The trial judge found that he was entitled

to a refund of that money. In my opinion there is ample evidence to sustain that finding, and the judgment of the trial court should be affirmed.

I can come to no conclusion other than that this court should follow the rules announced in its many decisions. I know of no reason why the established practice in this jurisdiction should be departed from in this instance.

I am authorized to state that CLARK, J., concurs herein and that MASON, C. J., and RILEY, J., concur in the conclusion herein.