## G. W. Boyd, *et al.* v. E. S. Wiggins, *et al.*

(Filed July 30, 1898.)

1. TAXATION—*Transient Property—Act Relating to Valid.* The act of March 8, 1895, entitled "Taxation of Transient Property" (Laws 1895, p. 229,) is a valid exercise of legislative authority. It contravenes no provisions of the constitution or laws of the United States. It relates to a subject-matter over which the legislature has jurisdiction. The mere fact that it provides a difference of procedure in respect to a certain class of property from that provided for other classes, or from the general procedure in regard to taxation, does not render the act invalid. These are matters of detail within legislative discretion.

2. TAXES—*Injunction Will Not Lie to Restrain Collection, When.* Where property located in one county on the 1st day of February was withheld from assessment in that county, and, after the 1st day of March, was removed to and located in another county, it might be lawfully assessed and taxed in such latter county. Injunction will not lie to prevent the collection of such taxes for any mere irregularity or omission in the procedure relating to the assessment or levy of such taxes, where it is not shown that such irregularity or omission injuriously affected the substantial rights of the person whose property was thus taxed.

(Syllabus by the Court.)

*Error from the District Court of Woodward County; before Frank Dale, District Judge.*

*Garrett & Thacker,* for plaintiffs in error.

*H. S. Cunningham, Attorney General,* for defendants in error.

Suit by G. W. Boyd and O. P. Jones against E. S. Wiggins and Robert Benn, treasurer and sheriff of Woodward county, to enjoin the collection of certain taxes. From a judgment enjoining the collection of a portion thereof, plaintiffs bring error. Affirmed.

Opinion of the court by

TARSNEY, J.: On April 12, 1897, plaintiffs removed

from Greer county, Oklahoma Territory, 1,230 head of cattle that were owned, located, and kept in said Greer county on the 1st day of February of said year, and, on the 19th day of April of said year, located said cattle in Woodward county. Two hundred and forty head of said cattle, on said 1st day of February, were owned by W. W. Locke and L. A Johnson, and were duly and properly assessed for taxes in said Greer county, for the year 1897, and were subsequently sold to the plaintiffs. Seven hundred and seventy head of said cattle were returned by plaintiffs for taxation in Greer county, and assessed in said county for taxation for the year 1897. Two hundred and twenty head of said cattle were removed out of said Greer County without having been returned by them for taxation, and without having been assessed for taxation in Greer county for the year 1897. The said herd of 1,230 head of cattle were assessed for taxation in Woodward county for the year 1897, after the 19th day of April of said year, and taxes thereon were levied for territorial, county, and other purposes for said year. The taxes assessed and levied on said cattle in Greer county for said year 1897 were duly paid to the officers of said county.

On the trial of this cause below, the court found that 1,010 head of said cattle were not liable for taxes assessed in Woodward county for said year 1897, but that 220 head not assessed in Greer county, were liable for taxes in Woodward county for said year; that the total amount of taxes properly assessed against the plaintiffs in Woodward county, upon said 220 head of cattle for the year 1897, was $138.38; and the temporary injunction granted was dissolved in so far as it restrained the defendants from collecting the said $138.38, and was made

perpetual against the collection of the balance of the taxes assessed against plaintiff's property in Woodward county for said year.

By section 1 of an act of the legislature approved March 8, 1895, (Laws 1895, p. 229) it was provided: "When any personal property shall be located in any county of this Territory after the first day of March of any year, which shall acquire an actual situs therein before the first day of September, such property is taxable therein for that year, and shall be assessed and placed on the tax-roll and the tax collected as provided in this act." By other provisions of the act the method for assessing, levying, and collecting such tax was provided; and it was therein provided that if personal property was brought into any county after the 1st day of March, and prior to the 1st day of September, in any year, it shall be the duty of the assessors to list and return such property for taxation for that year, unless the owner thereof should show to the assessor, under oath, that the same property had been listed for taxation for that year in some other state, or in another county in this Territory; and, if such property was brought within any county after the assessor had made his return for that year to the county clerk, the assessor should at once assess such property, and return the same to the county clerk if the tax-rolls were still in his hands, and, after that, to the county treasurer, and that such taxes should be entered on the tax books and collected as in other cases; that, if there was no assessor, then any township trustee or member of any city or town council where the property was located might make and return the assessment with like force and affect as though made by the assessor. The act further provided that "the person so assess-

ed shall have the right, if assessed after the third Monday in April, to appear before the township or city board of equalization at any time before the taxes become due, and his taxes shall be equalized as provided by law, in section 5620 of the Statutes of 1893."

We find nothing in this act which will warrant us in declaring it to be unconstitutional, as contended by plaintiffs in error. The power of the legislature in relation to taxation is only limited by the constitution and laws of the United States, and we are unable to perceive what provision of the constitution or of such laws the act in question is violative of. The legislature has jurisdiction to determine what property within the Territory shall be subject to taxation, and to subject all property within the Territory to taxation, except the property of the United States or property of Indians under the protection of the United States. The mere fact that the act of the legislature provides a difference of procedure in respect to a certain class of property from that provided for another class, or from the general procedure in regard to taxation, will not make the act providing such special procedure invalid. These are matters of detail within legislative discretion.

In *Thomas v. Gay*, 169 U. S. 283, 18 Sup. Ct. 347, it is said: "It is the law-making power which is to determine all questions of discretion or policy in ordering and apportioning taxes, which must make all the necessary rules and regulations, and decide upon the agencies by means of which the taxes shall be collected. When, as may sometimes happen, the legislature transcends its functions, and enacts, in the guise of a tax law, a law whereby the property of the citizen is confiscated or

taken for private purposes, the judiciary has the right and duty to interpose." But such a case is not presented by this record. We cannot preceive where the legislature transcended its functions in enacting this statute. It is not a measure under the guise of a tax law, whereby the property of a citizen can be confiscated or taken for private purposes. It makes provision for the taxation of no property that it not subject to taxation. It provides ample machinery for ascertaining a correct valuation of the property for taxation. The same rate of taxation is imposed as upon all other property; and it carefully provides against subjecting the citizen to double taxation, by providing that such property shall not be assessed if the owner shall show to the assessor, under oath, that the same property has been listed elsewhere for taxation for the same year.

Plaintiffs in error contend that the 220 head of cattle on account of which plaintiffs were held liable were subject to taxation in Greer county, having been in that county on the 1st day of February, 1897, and that Greer county is entitled to whatever taxes might be levied upon said cattle for said year. The answer to this is that Greer county is not here asserting any right to such taxes; that the Territory is entitled to taxes on said property for said year, no matter in what country the property was on the 1st day of February; and that the act of 1895 was in part intended to prevent property from escaping taxation that had escaped assessment in one county by making it assessable and taxable in the county to which it was removed between the 1st day of March and the 1st day of September.

Complaint is made that the act in question fixes no

time and place for the meeting of boards of equalization, and fails to provide for notice of such meeting. We have already said matters of procedure are mere matters of detail, within the discretion of the legislature. A township board of equalization is not provided for by any of the provisions of the Organic Act, and might be entirely dispensed with, or any other detail in the machinery for the assessment and levy of taxation might be dispensed with, by the legislature, and the citizen could not be heard to complain unless his substantial rights were injuriously affected thereby.

This court, in *Sweet v. Boyd*, 6 Okl. 699, 52 Pac. 939, held that: "Where a party invokes the powers of a court of equity to relieve from the payment of a tax, he must not only show that there has been a departure in manner or time from the proceedings provided for the assessment, levy, or the collection of the tax, or an omission in the procedure, but he must show that such departure or omission affects the groundwork and substance of the procedure, and affects the justice or merits of the claim on the part of the public, and injuriously affects his substantial rights. A court of equity will not lend its aid, by injunction, to restrain the collection of taxes because of mere irregularities in the tax proceedings, which did n t injure the substantial rights of the parties." That case is decisive of this. There is no equity in this case. It is not pretended that any substantial right or any right of the plaintiffs was taken from them by the procedure complained of. The record shows and the admissions in the brief of counsel for plaintiffs show that the plaintiffs sought to elude their just proportion of taxation for the support of the government whose protection they were

receiving; that they fraudulently concealed from assess-ment a portion of their property in Greer county, mak-ing only a return of a portion of such property subject to taxation; that they then removed such property so con-cealed to another county, and, when it is there assessed for its proper share of taxation, they seek to invoke the powers of a court of equity to restrain the collection of such tax. This proceeding can only be characterized as an effort to use a court of equity to assist the plaintiffs in consummating a fraud upon the public—a fraud founded upon a false return, made to evade the taxation they now seek to restrain. Courts of equity will not lend their aid to such purposes. For the reasons stated, the judgment of the court below is affirmed.

All of the Justices concurring.