## Protest of MISSOURI, KANSAS & TEXAS RAILWAY CO.

No. 22109.   Opinion Filed May 19, 1931.

Rehearing Denied June 23, 1931.

Roy Paul, Co. Atty., (C. C. Hatchett, Special Counsel), for protestee.

M. D. Green, John E. M. Taylor, and Eric Haase, for protestant.

McNEILL, J. This action comes to this court to review the judgment of the Court of Tax Review, entered on January 20, 1931, sustaining the protest of the Missouri, Kansas & Texas Railway Company, commenced in the Court of Tax Review on November 28, 1930, against the general fund and drag fund tax levies in Bryan county, Okla., for the fiscal year beginning July 1, 1930, and ending June 30, 1931.

The levies involved are the general fund levies of 1.50 mills and the drag fund levy of 2 mills, being the entire levy for the year 1930-31 in each of the four townships

in Bryan county, to wit: Speairs, Calera, Colbert, and Caddo. The parties, for convenience, will be referred to as follows: County excise board of Bryan county, Okla., plaintiff in error, as protestee, and Missouri, Kansas & Texas Railway Company, defendant in error, as protestant.

The protestant contends that the excise board of Bryan county was without authority to make and certify said tax levies. The grounds of protest on the levies of these townships are substantially as follows:

"(a) The estimates made and filed with the excise board were not made by the directors of the townships, it being alleged that the estimates as filed were made and submitted by the board of county commissioners. This ground was overruled by the Court of Tax Review.

"(b) That the financial statements and estimates of needs of these townships were not published or posted within the townships as required by law. This ground of protest was overruled.

"(c) That under the law it is required that at each February meeting of the township board, said board shall select from its township road system the roads to be dragged for one year, and shall employ a superintendent of the township road system, who shall have supervision thereof, including the making of all contracts for dragging, etc. This ground of protest was overruled.

"(d) A further ground of protest is that the board of county commissioners, acting for the townships, failed to certify said financial statements and estimated needs as required by law. The Court of Tax Review sustained this ground of protest and held the entire general fund and drag fund levies of these four townships invalid, and ordered the same stricken from the tax rolls for said fiscal year."

It was stipulated that the evidence taken on the hearing of the protest of the St. Louis-San Francisco Railway Company against the tax levies of Bryan county with respect to township drag fund levies in case No. 234, being 22110 in this court, styled In the Matter of the Protest of the St. Louis-San Francisco Railway Company; a Corporation, against Illegal and Excessive Tax Levies for the Fiscal Year Beginning July 1, 1930, and Ending June 30, 1931, by the Excise Board of Bryan County, State of Oklahoma, and decided by this court on May 12. 1930, 149 Okla. 53, 299 Pac. 190 should be heard and considered by the court in this case with the same rulings of the court as in the Frisco Case.

The substance of the testimony on this question being that in February, 1930, the board of county commissioners, acting as township officers, met in their office at the courthouse for the purpose of laying out the dragable roads of each township for which the levy of two mills was to be expended. They designated on a map prepared by the county surveyor the roads to be dragged for each township. The township roads were marked in yellow and the county highway in red, and this was adopted by the board of county commissioners. It seems that each commissioner looked after the dragging of the roads in the townships in his district, and that all the drag fund levy was to be used on the roads designated on the map.

The Court of Tax Review found on this particular question that compliance with the provisions of section 10203, O. O. S. 1921, was not a condition precedent to the right of the excise board to make a levy for township roads for drag purposes, and found that there was shown by the evidence a substantial compliance with the requirements of the aforesaid section. The evidence shows that the estimates of these four townships were introduced in evidence and no objection is raised as to the form of the financial statement or that the items of the estimated needs for the various townships are excessive or illegal. The financial statement and estimated needs of Calera township on the front page shows, in part, as follows:

"Financial Statement and Estimated Needs.

"Calera township, Bryan county, state of Oklahoma. Statement of fiscal condition for the fiscal year beginning July 1, 1929, and ending June 30, 1930; and estimated needs for current expenses for fiscal year beginning July 1, 1930, and ending June 30, 1931.

"To the County Excise Board:
"County of Bryan, State of Oklahoma.

"Gentlemen:

"Pursuant to the requirements of section 9695, O. O. S. 1921, we submit herewith, for your consideration, the within statement of the fiscal condition of Calera township, county of Bryan, and probable needs of said township for the ensuing fiscal year; also herewith find proof of publication as required by law.

"Dated at_____, this____ day of____ 1930.
           "_____Trustee
"_____   _____Treasurer
"Clerk

"Proof of Publication.
"Affidavit.

"State of Oklahoma, County of_____, ss:

"Personally appeared before me, the undersigned, notary public, _____clerk of the township board of_____ township, county of _____ state of Oklahoma, who being

first duly sworn according to law, deposes and says: That he complied with the law by having the financial statement and estimate published as required by law in one__ two consecutive issues of the _____, a week ___ daily newspaper published in said township, a copy of which published statement and estimate, together with proof of publication thereof, is hereby attached and marked exhibit 'A' and made a part hereof; or posted in five public places in said township of_____ there being no newspaper published therein.

"Subscribed and sworn to before me this the _____ day of _____ 1930.

"_____Notary Public.

"My commission expires _____ 19_____.

"Filed this the __ day of _____ 1930.

"_____Secretary of Excise Board

"_____ County, Oklahoma."

On the back of each financial statement and estimated needs is a certificate of the excise board, in part, as follows:

"Certificate of Excise Board.

"State of Oklahoma, County of Bryan, ss.

"We, the undersigned members of the excise board of said county and state, do hereby certify that we have examined the foregoing estimate of proposed current expenses for the ensuing fiscal year ending June 30, 1931, as prepared by the officers of Calera township, said county and state; that we have revised and adjusted the separate items thereof, as stated in column 10 of said estimate, to conform to the current needs of said township for said fiscal year as ascertained by us; which said items, as revised and adjusted, are hereby approved, and we do hereby appropriate for the respective named purposes the several amounts so stated and found to be necessary.

"We further certify that we have ascertained from the financial statement presented by the officers of said township, the surplus balance of revenue on hand at the close of the previous fiscal year, and have ascertained the probable income of said township, from all sources other than ad valorem taxation. The aggregate by funds of said appropriations, surplus revenue, and estimated income, and the balance required to be raised by taxation, with 10 per cent. added thereto for delinquent tax, is as follows: * * *

"And we do hereby order the said levies to be certified by the secretary of this board to the county assessor to be extended upon the tax rolls for the year 1930.

"Dated at Durant, Okla., this 17 day of Oct. 1930.

"The County Excise Board.

"J. Walter Mills, Co. Clerk and Sec. of Excise Bd.

"R. Parrish, Member Bd. of Co. Comm.

"John A. Phillips, County Assessor.

"E. P. Goad, Co. Treas.

"J. A. Shirley, Co. Attorney.

"W. H. Ritchey, Co. Judge and Chairman of Excise Board.

"W. Q. Harris, Co. Superintendent."

Each of the other townships in question is similar.

· Evidence was introduced showing that each member of the board of county commissioners posted five copies of the financial statement and estimated needs in five public places in each township. Mr. Parrish posted copies of same in Caddo township, which is within his commissioner's district; Mr. Diffey, another member of the board, posted copies in Colbert and Calera townships, which are within his commissioner's district; and Mr. Streetman posted copies in Speairs township, which is a part of his commissioner's district.

The evidence shows that the commissioners together with the county clerk made each of these financial statements and estimated needs for the fiscal year 1930-31 at a meeting held immediately after July 1, 1930; that the same, after being prepared, were approved by the board of county commissioners, acting as township officers, and after that the posting was performed as aforesaid stated.

Each of the commissioners testified that the financial statements were by the individual commissioners submitted to the excise board, for the various townships in their respective districts—that is, Mr. Parrish submitted the same for Caddo township, Mr. Streetman submitted the same for Speairs township, and Mr. Diffey submitted the same for Calera and Colbert townships.

The county treasurer testified that he was a member of the excise board of Bryan county, that the said excise board, at the time of considering the financial statements and the estimated needs for these four townships, made an investigation and found that the copies had been posted as provided by law. The certificate of the excise board recites in part that:

"We, the undersigned members of the excise board, * * * do hereby certify that we have examined the foregoing estimate of proposed current expenses for the ensuing fiscal year ending June 30, 1931, as prepared by the officers of Calera township, * * * and that we have revised and adjusted the separate items thereof, * * * which said items are hereby approved; * * * and we further certify that we have ascertained from the financial statement presented by the officers of said township * * *"

—and shows that the same was signed by the various individuals composing the excise board. Said items were approved and appropriated as provided therein, that is, two mills in each township for drag fund purposes and 1.50 mills for general fund purposes.

The Court of Tax Review found that the board of county commissioners were and are de facto officers of these four townships and as such were empowered and authorized to make and certify financial statements and estimated needs; that the financial statements and estimated needs were actually posted within said townships, and also made a finding that the county commissioners, acting as township officers, selected and designated from the township system of roads the roads to be dragged for one year, and that the said commissioners employed a superintendent over said township road system for each of said townships, said commissioner being the road superintendent for the townships within his district.

The Court of Tax Review, by reason of the commissioners failing to properly certify said financial statement and estimated needs, sustained the protest of the protestants.

We first discuss the question as to whether or not the failure of the county commissioners to certify the financial statement and estimated needs was prerequisite to the making of a valid levy for township purposes in this case.

It is conceded that each financial statement and estimated need has a form of certificate for the signature of the officers on the back of the estimate. This blank form of certificate has heretofore been set out herein, and the certificate of said township officers was not filled out on the financial statement and estimated needs of either of said townships, and protestant contends that before the excise board has jurisdiction to approve the estimated needs of the county and its various municipal subdivisions and make and approve appropriations therefor, the financial statement and the estimated needs must first be duly certified to the excise board by the officers of the county and of the various municipal subdivisions of the county as required by the statutes.

Section 9695, C. O. S. 1921, as to such financial statements and estimates, provides, in part, as follows:

"The financial statement shall be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements, and shall be sworn to as being true and correct. * * * Said estimates so made out and published as aforesaid shall, as soon as completed, be certified to the excise board of the county. * * * The estimates and statements provided for in section 4 shall also at the same time be transmitted to the excise board."

Section 9698, C. O. S. 1921, provides for the excise board meeting and examining the financial statements,

"* * * and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified by each of said municipalities, and determining the items and amounts for which appropriations shall be made for such year, detailed as to each officer, board or department. * * *"

In the case of Sweet v. Boyd, 6 Okla. 700, 52 Pac. 939, it is stated:

"Other contentions of defendants in error are that the boards of equalization of the townships did not meet at the time prescribed by statute for the equalization of taxes for the year 1896; that the county board of equalization did not meet at the time prescribed by statute, nor equalize the taxes of said county for said year as required by law; that the board of county commissioners did not exist under the laws of Oklahoma in said county until May 21, 1896, and that said board did not meet on the first Monday of June as a board of equalization; that the various township assessors did not, on or about the first Monday in May, make out and deliver to the county clerk an assessment roll as required by law; that the county clerk did not make out an abstract of said assessment rolls, or any of them, as equalized and corrected, on or before the third Monday in June; and that said clerk did not, on or before said date, transmit said assessment roll to the auditor of the territory. The petition of the defendants in error, while it alleges all these matters as invalidating the tax, does not deny that the various boards and officers did, in fact, perform the duties required of them by law, though at a different time than that stated in the law. In other words, it is not alleged that the assessments were not equalized by township boards of equalization, or that the returns from the various townships were not equalized by a board of county equalization, or that the county clerk did not make an abstract of the assessments and forward the same to the auditor of the territory, or that the territorial board omitted its duty in equalizing the assessment of said Greer county with the other counties of the territory."

In discussing the propositions of law applicable, the Territorial Supreme Court uses the following language:

"Where a party invokes the powers of a

court of equity to relieve him from the payment of a tax, he must not only show that there has been a departure in manner or time from the proceedings provided for the assessment, levy, or collection of the tax, or an omission in the procedure, but he must show that such departure or omission affects the groundwork and substance of the procedure, and affects the justice or merit of the claim on the part of the public, and affects injuriously his substantial rights. * * *

"They do not complain that such irregularities increased in any particular the taxes, or imposed any burden upon them that would not have been imposed if everything had been done in manner and time as provided by the statute. * * *"

This court has heretofore construed a somewhat similar situation arising under section 7326, R. L. 1910, being section 9621, C. O. S. 1921, relating to the affidavit of the assessor required to be attached to the assessment roll, in the case of Board of Com'rs of Garfield Co. v. Field, 63 Okla. 80, 162 Pac. 733. This was an action enjoining the collection of certain taxes assessed against the property of plaintiff for the year 1911. It appears that the assessment roll was made out, but the question arose as to whether it was properly authenticated by the assessor as required by section 7326, R. L. 1910. The court in speaking of these requirements states:

"And if, in fact, the affidavit required by said section was not attached to the assessment roll, the failure of the assessor to make said affidavit and attach it would not render the tax illegal nor entitle the plaintiffs to any relief in this proceeding. The requirement in this regard is directory, and a failure upon the part of the assessor to attach said oath to the assessment roll is an irregularity merely, and will not defeat the tax in a collateral proceeding. Prairie Oil & Gas Co. v. Cruce, 45 Okla. 774, 147 Pac. 152; In re East Avenue Bap. Church, 57 Hun. 590, 11 N. Y. Supp. 113; Moore v. Turner (43 Ark. 243); Merriam v. Dovey, 25 Neb. 618, 41 N. W. 550; Twinting v. Finlay, 55 Neb. 152, 75 N. W. 548; Avant v. Flynn, 2 S. D. 153, 49 N. W. 15; Wisconsin Cent. Ry. Co. v. Lincoln Co., 67 Wis. 478, 30 N. W. 619; Chesnut v. Elliott, 61 Miss. 569; Odiorne v. Rand, 69 N. H. 504; Fifield v. Marinette Co., 62 Wis. 532, 22 N. W. 705; Oregon R. & N. Co. v. Umatilla Co., 47 Ore. 198, 81 Pac. 352; Wallapai Min. & Dev. Co. v. Territory, 9 Ariz. 376, 84 Pac. 85; Kansas Mut. L. Ass'n v. Hill, 51 Kan. 636, 33 Pac. 300."

In Re Rolator, 67 Okla. 215, 170 Pac. 507, the court reaffirmed the holding in the case of the Board of County Commissioners v. Fields, supra, and in the first paragraph of the syllabus of the opinion states:

"The provision in section 7326, Rev. Laws 1910, requiring the assessor to verify the assessment roll, is directory, and the failure of the assessor to attach this oath is an irregularity that will not render the assessment void."

We are of the opinion that these cases come within the rule announced in the case of Bonaparte v. Nelson, 142 Okla. 54, 285 Pac. 100, which involves a suit to recover the county taxes in Oklahoma county for the fiscal year of 1927-28, wherein it was contended that the taxes were illegal upon five separate grounds:

"First, that the financial statement and estimate of needs was not published as is by law required; second, that the financial statement and estimate of needs was not certified to the excise board as is by law required; third, the minutes and records of the purported action of the excise board was never authenticated or certified to; fourth, that the financial statement and estimate of needs was not properly signed or certified by the members of the excise board; fifth, the levies as purported to have been made by the excise board were never certified to the officer whose duty it is to make up the tax roll."

The court, in the case of Bonaparte v. Nelson, supra, says:

"The excise boards, like municipal boards and other public officers, are presumed to discharge the duties which the law imposes upon them, and the same is true relative to the board of county commissioners and the school district boards and other municipal bodies that are required by law to make financial statements and estimates of needs and that are required to publish the same, and in the absence of proof it will be presumed that the officers, upon whom acts and duties are enjoined by law, performed those duties. This presumption continues in favor of the acts of such officers until it is affirmatively shown by competent evidence to the contrary. * * *

"There is no dispute that the various boards that were required to make in writing financial statements showing the true financial conditions of their respective municipality as of the close of the previous year, and that an itemized statement of estimated needs, and probable income from sources other than ad valorem taxes, met as required by law, and made said statements supported by schedules or exhibits, as required by law; but it is contended that it is not shown that the statements were published as required by law. The presumption of law is that the same were published, and the burden was on the plaintiff to show that this requirement of the law was not met, and this the plaintiff failed to do. * * *

"The objects of the statute are to require

the county commissioners and the officers of cities, towns, townships, and school districts to make financial statements of the needs of the respective bodies and to publish the same, showing to the taxpayers the necessity of making ad valorem tax levies and the amount necessary to be raised in requiring the excise board to make levies in accordance with the estimates. * * *

"We further hold that the trial court erred in ruling, finding, and holding that it was necessary for the individual members of the excise board to certify and sign the financial statement and estimate of needs, or to sign the certificate certifying the levies to the county assessor. The county clerk, as secretary of the excise board, keeps the minutes, records, and proceedings of the board and may certify to the same. The minutes of the meeting of the excise board should be signed by the county judge as chairman and properly attested by the county clerk as secretary; however, if this is overlooked, then the genuineness and correctness of the minutes, resolutions, records, and proceedings may be established by the testimony of the clerk or members of the board' who were present and can testify as to what was actually done. * * * But the burden was upon the plaintiff, defendant in error, to establish as an affirmative fact that the financial statement and estimate of needs was not published. The mere fact that the publisher's affidavit was not attached to the financial statement and estimate of needs that was offered in evidence does not show or tend to show that the estimate so made out was not published and certified to the excise board of the county, and that the affidavit showing the publication thereof was not attached to the printed copy. The law presumes that the excise board were in possession of the proof of the publication of the financial statement and estimate of needs when they made the levies, for the reason that the law required the estimate and financial statement to be published and to be certified to them, and the presumption of law is that the commissioners performed their duty and certified and published the financial statement and estimate of needs as by law required, it being one of their official duties to do so. * * * The law was complied with when these officers performed their duties, and the fact that the clerk may have overlooked some purely ministerial duty in keeping his records will not defeat the tax levy. * * *

"This court has never held that a tax levy will be sustained as valid unless it was levied in substantial compliance with the statutes, in order that the taxpayer may know for what purpose and the amount of the tax being levied and that it is necessary to sustain the needs of the county and the subdivisions thereof, and that it comes within the constitutional and statutory limits, and that the taxpayer's property may not be sacrificed and his rights injuriously affected. On the other hand, where the levy is made in substantial compliance with law, it should be sustained, otherwise the state and county government could not exist and our school system would crumble.

"It takes revenue to maintain the state government and the subdivisions thereof, and where the tax is illegal or excessive, then the same should be so held; but where it is just and comes within the constitutional and statutory limits, it should be sustained, and no tax should be held invalid upon mere technical grounds, and where it appears to this court that all the provisions of law relative to making the levy have been substantially complied with, we will hold the levy valid."

In the case of Rogers, County Treasurer, v. Bass & Harbour Co., 64 Okla. 321, 168 Pac. 212, in an opinion by Mr. Justice Hardy, the court states:

"The members of the excise board are officials of the county, chosen by the electors thereof at the regular election, upon whom are imposed the duties performed by such board, and the taxes levied by them for county purposes are, in theory and in fact, levied by the proper officials of the county. As to the school district taxes and taxes in the city of Muskogee in which the state has a sovereign interest, the authority of the excise board to act in reference thereto is settled by the decisions just cited. * * *

"In Kansas City R. R. Co. v. Tontz, 29 Kan. 460, the tax levy had been reported to the county clerk, entered on the tax rolls, and the rolls certified to the treasurer, as in the case at bar. The plaintiff refused to pay the tax because no levy was entered of record. Six months after the levy was made, the commissioners met, and by a nunc pro tunc order, corrected the minutes of that proceeding so as to cause a record of the levy to be made. In this case the court says:

" 'Now, although no record of the levy had yet been made, yet the plaintiff might have ascertained that a levy had, in fact, been made, if it had made any inquiry; and the fact that the county clerk had entered the tax upon the tax rolls of the county and placed the tax rolls in the hands of the county treasurer for collection, and that the county treasurer was then endeavoring to collect all the taxes entered thereon, were sufficient to put the plaintiff upon inquiry. We think that the tax was at all times valid, after the tax rolls were placed in the hands of the county treasurer for collection; that the mere fact that no entry of the levy of the tax had yet been made is not sufficient to invalidate the tax.'

"Following the foregoing authorities we hold that the statutes requiring the clerk to keep a record of the proceedings of the board

172

was directory, and not mandatory, and the failure to keep such record did not render the proceedings void, and, assuming that the tax was, in fact, levied, and the clerk had spread the same upon the tax rolls and delivered the rolls to the county treasurer, the tax was to all intents and purposes a valid tax, and its payment could not be enjoined upon the ground that the record of the proceedings failed to affirmatively show the levy thereof, and the court committed error in excluding the evidence offered."

In the case at bar, there is no dispute about the estimates being prepared by the commissioners, and no showing made that the amounts of the estimates as made are not within the constitutional and statutory limits for current expenses and necessary to the maintenance of the township government. These estimates were submitted to the county excise board and considered by it and the estimates approved by it, and the tax levied. The only objection raised is that the estimates were not verified. We are of the opinion that the requirement as to verification is directory, and where the estimate is made and submitted and comes within the constitutional and statutory limits and it appears to be necessary to the proper carrying on and conducting of the township affairs, that the same should not be set aside on account of such technicality alone. We think the officers in making estimates for municipal affairs should be careful to comply with the requirements of the law, yet where a taxpayer seeks to have a levy set aside, after it has been approved by the county excise board, we are of the opinion that he should be required to show that the tax does not come within the constitutional and statutory limit for current expense or that the estimate is not necessary to the carrying on of the affairs of the municipality.

If the municipality could have legally made the estimate and the county excise board could and should have made the tax levy, the taxpayer is not materially injured.

The protestant further contends that the county commissioners had no authority to make and submit a financial statement and estimated needs for such township to the excise board, as there were no township officers and township offices.

"(a) The county commissioners had no authority to make and submit the financial statements and estimates of needs for said townships to the excise board, as there were no township offices and township officers, and no township government for said townships, and township government and organizations therein had never been legally

abolished, and no election had been held for that purpose.

"(b) The acts or statutes purporting or attempting to abolish township offices in Bryan county, Okla., and transfer the powers and duties of said officers to the board of county commissioners and other county officers, are unconstitutional and void.

"(c) No notice was given of the intended introduction of the aforesaid acts or any other statute or act which purported or attempted to abolish township offices in Bryan county, Okla.; they being special acts, notice was necessary under the Constitution."

The Court of Tax Review decided this question against the protestant, and made the following finding thereon:

"1. That the board of county commissioners of Bryan county were and are de facto officers of Speairs, Calera, Colbert and Caddo townships, and as such were empowered and authorized to make and certify financial statements and estimates of needs for said townships to the excise board of the county, and that the protest on the ground should be denied, to which finding protestant excepts."

On this question, it was stipulated and agreed by the parties that, "beginning with at least November, 1913, the board of county commissioners took over jurisdiction, management, and control of the various townships in Bryan county, and have continued to so act since that date." Counsel for protestant contends that no election had been held for the purpose of abolishing township government and organization pursuant to the provisions of section 5a of article 5 of the Constitution of Oklahoma, being an amendment to the Constitution, passed by the Legislature, approved May 16, 1913, and adopted by the people at an election held August 5, 1913. This section 5a of article 5 of the Constitution, supra, provides for a plan by which a majority of the legal voters of each county in the state may determine the question of abolishing township organization or government, and, if such township organization or government is abolished, after this question has been submitted to such legal voters, then the said section provides that:

"Township organization or government shall cease in such county and all the duties theretofore performed by the township officers shall be cast upon and be performed by such county officers having like duties to perform in relation to the county at large as such township officers performed in relation to the township at large."

Such section also provides for the submission of the question of return to township

government. The county commissioners have acted under the act of the Legislature purporting to abolish the township offices since November, 1913. We feel it unnecessary in this case to enter into an extended discussion of this constitutional question. This court has heretofore decided in the case of Hudgins v. Foster (1928), 131 Okla. 90, 267 Pac. 645, which was an action by the county commissioners of Creek county, Okla., against the defendants, constituting the board of trustees of Sapulpa township in said county, in which plaintiff sought to mandamus the township board to turn over to the county clerk the files, books, records, accounts, and moneys of said township as provided by the 1927 Law, chapter 107, page 168, Session Laws 1927, effective March 19, 1927, amending the 1915 (c. 286) law and excepting certain counties from its provision, in that the 1927 Act was unconstitutional and void.

To the same effect is the case of Roberts v. Ledgerwood, 134 Okla. 152, 272 Pac. 448, wherein Ledgerwood et al., as taxpayers and as officers of the various township boards of Craig county, sought to enjoin the defendant, composing the board of county commissioners of Craig county, from discharging the duties of the various township boards and also to enjoin them from receiving any compensation for certain road duties to be performed by them, and wherein the causes of action therein set forth involved the constitutionality of House Bill No. 358, which was passed by the Legislature in 1927, and approved by the Governor, March 18, 1927 (Session Laws 1927, c. 182, page 235) ; and also the constitutionality of House Bill No. 355, chapter 107, S. L. 1927, the latter being an act to abolish the office of township trustee, township clerk, and township treasurer of each township in certain counties in Oklahoma, wherein township officers in 49 counties of the state were attempted to be abolished and where same were retained in 28 counties of the state without regard to any classification thereof. In both causes of action the court declared the same unconstitutional.

The 1913 Act, though practically identical with the 1927 Act, and in view of the former holding of the court it might inferentially be considered as invalid, but the validity or constitutionality of the Act of 1913 has not been held expressly invalid by this court; and in an action of this character, in which the same is being collaterally attacked, we feel that such consideration as to its validity or invalidity would not be determinative of the issues herein. The county commissioners were directed by said enactment to perform the duties and functions of the township officers, and the attack now being made by the protestant is not on the ground that the township offices were abolished, but is centered upon the acts of the commissioners who have performed the duties of such township offices. Assuming, but not deciding, that the Act of 1913 is invalid, we are presented with the question of whether or not the county commissioners were de facto officers with authority to prepare and file the financial statements and estimated needs in question. The question of a de facto office has frequently been before the courts.

A case applicable to the question herein is that of Leach v. People, 122 Ill. 422, 12 N. E. 726, wherein there was a township organization in each county governed by supervisors of the several townships, consisting of 15 members, which form of township government was prescribed by the Constitution of Illinois. The Legislature passed an act attempting to take the management of county affairs from the 15 supervisors and vesting the same in a board consisting of five members. The Supreme Court of Illinois held the legislative enactment unconstitutional and that the officers elected thereunder, from considerations of public policy and public acquiescence therein during a series of years with no other body ready and willing to act and serve, as to the board of supervisors were officers de facto.

The court states:

"The act, then, being held to be not valid, does it follow, as contended by appellant, that the acts of the official body elected under that law in compliance with its provisions are null and void? This body was the de facto board of supervisors of Wayne county, with color of legal title, and it is the well-settled principle that the acts of such officers are valid when they concern the public, or the rights of third persons who have an interest in the act done. But it is said that this principle applies only where there is a de jure office for a de facto officer to fill,—citing the recent case of Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. Rep. 1121, as so holding; and it is insisted there was no de jure board of supervisors of Wayne county.

"Wherever township organization prevails, there is in every county a board of supervisors for the transaction of the affairs of the county. The act in question merely changed the number of the members of the board from 15 to five, and the mode of election from towns singly to two or more towns unitedly, and the term of office. Nothing was added to or taken from the powers or duties of the board. After the passage of the act, there still remained the board of

supervisors of Wayne county, the official body for the management of the county's affairs, and the persons elected as members under the act went on, under the sanction of the statute, and exercised the powers and duties of the board of supervisors of Wayne county without question. There was no rival board, but it was the sole acting board of supervisors in Wayne county. * * *

"There was all the while the legally established office or official body of the board of supervisors of Wayne county. And, so far as respects the present question, there would not seem to be any substantial distinction between this case and that of People v. Bangs (24 Ill. 184), where there were two elected judges,—the one, who was rightfully elected, and the one elected under the unconstitutional law; and it was held that the acts of the latter were valid as those of a de facto officer. * * *

"After the passage of this local law, the town supervisors of Wayne county, who, by virtue of their office, were members of the board of supervisors, declined all action as such members, and yielded to the persons elected as members under the local law as the rightful board of supervisors of Wayne county. The latter, under their election in pursuance of the act of the general assembly, entered upon the duties of their office, and went on and exercised the powers and duties of the board of supervisors of Wayne county for years, without question of their right to do so. They had the sole management and transaction of the affairs of the county, and did all the official legislative business of the county which there was done. There was no other official body ready and willing to do it. * * *

"They were recognized and acquiesced in by all the public as the board of supervisors of Wayne county; and to hold their acts to be invalid would be most disastrous to the public interest, and that of individuals who were justified in relying upon such acts as those of the board of supervisors of the county.

"There are present here all the elements which, from considerations of public policy, and for the avoiding of public inconvenience, have been recognized as going to make up the character of de facto officers whose acts should be held valid as officers by virtue of an election as such under an act of the Legislature,—reputation of being public officers, and public belief of their being such; public recognition thereof, and public acquiescence therein; and action as such unquestioned during a series of years, with no other body ready and willing to act as the board of supervisors. We are therefore of opinion that this act of, * * * in relation to the board of supervisors of Wayne county, even if it be unconstitutional, was sufficient to give color of title; that the official board elected and acting under the law were officers de facto; and that their acts should be held valid so far as the public and third persons are concerned."

This case was approved in a later case, to wit, People ex rel. Hicks, County Collector, v. Lycan (Ill. 1924) 145 N. E. 595. To the same effect see Morford v. Territory, 10 Okla. 741, 63 Pac. 958; C., R. & P. Railway v. Carroll, 114 Okla. 193, 245 Pac. 649; Koch v. Keene, 124 Okla. 270, 255 Pac. 690; Ex parte Crump, 10 Okla. Cr. 133, 135 Pac. 428; Nofire v. U. S., 41 L. Ed. 590; United States v. Rogers, 61 L. Ed. 1011.

In the instant case the board of county commissioners were performing and acting as township trustees. This action of the commissioners dealing with public questions has received public recognition and has been acquiesced in for the past approximately 18 years by the general public, including the protestant, having valuable property in the particular townships in question. The township offices are now and have been since statehood in existence, and we are of the opinion that in this case the county commissioners were officers de facto and were acting as such in the performance of public official duties for and on behalf of the townships in question, subserving the interest of the public, which has been acquiesced in by the people for many years, and their acts should be given validity in the exercise of powers and functions enjoined by law upon them in their endeavor to follow out the provisions of the Act of 1913, section 10973, C. O. S. 1921, wherein it is provided that:

"The offices of township trustee, township clerk and township treasurer of each township in the state of Oklahoma are hereby abolished, and the powers and duties of said trustee, clerk, and treasurer are hereby transferred to and shall be exercised by the board of county commissioners of the several counties of the state, whose duty shall be in addition to the other duties required by law:

"First: To audit all accounts or demands legally presented to it against any township in the county.

"Second: To make and publish as provided by law all estimated needs for each township in the county for township road and bridge purposes.

"Third: To perform all other duties provided by law for the township board of directors."

We conclude that the judgment of the Court of Tax Review in holding that the failure of the county commissioners to certify the financial statement and estimated needs of the townships in question should

be reversed and that the finding that the board of county commissioners of Bryan county were and are de facto officers of said townships in question and as such were empowered and authorized to make and certify financial statements and estimated needs of the townships to the excise board of the county should be affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. ANDREWS, J., dissents. RILEY, J., absent.

ANDREWS, J. (dissenting.) I cannot concur with my associates in the opinion and decision of this court in this cause. I desire to express my views on one proposition, which I think is erroneously decided. That proposition, as presented by the defendant in error, is as follows:

"The board of county commissioners failed to certify the financial statements and estimates of needs as required by law."

The Court of Tax Review found that the board of county commissioners failed to certify the financial statements and estimates of needs in question to the county excise board and sustained the protest on that ground.

The record shows that no certification of the financial statements and estimates of needs was made to the county excise board in any form or manner. Certain papers purporting to be the financial statements and estimates of needs were "submitted" to the county excise board. Upon the blank prepared by the State Examiner and Inspector for the use of township officers there are two forms to be executed by the township officers, or, in case the duties are to be performed by the board of county commissioners, by the board of county commissioners. Neither of those blanks was executed by the board of county commissioners, who were acting for the township officers. On the blanks "submitted" to the county excise board they appear as follows:

"Financial Statement and Estimated Needs.

"Spears Township, Bryan County, State of Oklahoma.

"Statement of fiscal condition for the fiscal year beginning July 1, 1929, and ending June 30, 1930; and estimated needs for current expenses for fiscal year beginning July 1, 1930, and ending June 30, 1931.

'To the County Excise Board:

"County of Bryan, State of Oklahoma.

"Gentlemen:

"Pursuant to the requirements of section 9695, C. O. S. 1921, we submit herewith, for your consideration, the within statement of the fiscal condition of Spears township, county of Bryan, state of Oklahoma, for the fiscal year beginning July 1, 1929, and ending June 30, 1930, together with an itemized statement of the estimated income and probable needs of said township for the ensuing fiscal year; also herewith find proof of publication as required by law.

"Dated at Durant, this 8 day of July, 1930.

"_____      _____
Clerk                                    Trustee

"_____
Treasurer."

—and:

"Certificate.

"State of Oklahoma, County of Bryan, ss.;

"We, the undersigned elected, qualified and acting officers of Spears township, county of Bryan, state of Oklahoma, do hereby certify that the foregoing statement is true and correct as reflected by the records of the township clerk and treasurer. We further certify that the foregoing estimate for current expenses for the fiscal year beginning July 1, 1930, and ending June 30, 1931, as shown by exhibit 'K' are reasonably necessary for the proper conduct of the affairs of the said municipality; that the estimated income from sources other than ad valorem taxes is not in excess of the amount collected from the same sources during the fiscal year ending June 30, 1930, and that the said estimates were prepared at a meeting held on the first Monday in July, 1930, the same being the 8 day of July, 1930.

"_____      _____
Clerk.                                   Treasurer.

"_____
Trustee.

"Subscribed and sworn to before me this____ day of July, 1930.

"_____
Notary Public.

"My Commission Expires _____"

Section 9695, C. O. S. 1921, provides that the directors of each township shall meet on the first Monday in July of each year and make in writing a financial statement showing the true fiscal condition of the township as of the close of the previous year, and an itemized statement of estimated needs and probable income from sources other than ad valorem tax of the township for current expense for the current fiscal year. The financial statement is required to be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements and it is further required that it be sworn to as being true and correct. That plain and mandatory, and what I consider to be extremely necessary, requirement of the statute was entirely ignored. Nowhere does it ap-

year, either from the instruments or from the record, that that statement was sworn to as being true and correct.

Section 9695, Id., further provides that the statement of estimated needs shall be itemized as to show by classes, first, the several amounts necessary for the current expense of the township and each officer and department thereof; second, the amount required by law to be provided for sinking fund purposes; and third, the probable income that will be received from all sources other than ad valorem tax, and it is required to be detailed in form and amount so as to disclose the several items for which the excise board is authorized and required to approve estimates and make appropriations. The section further requires publication of the financial statements and estimates and that "Said estimates so made out and published as aforesaid shall, as soon as completed, be **certified** to the excise board of the county, together with an affidavit attached, showing the publication or posting thereof, as required by this act." The estimates of financial needs in this case were not certified to the excise board of the county.

Section 9698, C. O. S. 1921, provides that the excise board shall meet at the county seat on the last Saturday of July, and that it may adjourn from day to day and from time to time, for the purpose of examining the financial statements for the previous fiscal year as submitted by the townships, and ascertaining the true fiscal condition of each thereof at the close of such year, and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year "as certified" by each of said municipalities, and determining the items and amounts for which appropriations shall be made for such year, and that when the excise board shall have examined, revised, and adjusted the items of the respective estimates and shall have ascertained the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary.

Section 9699, C. O. S. 1921, provides that when the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the township and shall have computed the total of the several items of the appropriations for current expense and sinking fund purposes with ten per cent. added thereto for delinquent tax, they shall thereupon make the levies therefor, after de-

ducting from the total so computed the amount of any surplus balance of revenue or levy ascertained to be on hand for the previous year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, provided, that in no event shall the amount of such estimated income exceed the actual collections from such sources for the previous fiscal year.

Section 9700, C. O. S. 1921, provides:

"Should any municipality fail to make and submit an estimate as herein provided, the excise board shall have authority to make an appropriation for current expense and sinking fund purposes and make such levy therefor as it may find necessary to meet the probable needs of such municipality, provided that no such estimate shall be approved until the same shall have been by the excise board advertised in like manner to items that shall be added to or increased in an estimate."

That section provides the method for correcting the conditions shown by the record in this case. Under its provisions the excise board could have had the financial statements and estimates certified as required by law by the township officers, or the excise board could have made the appropriations for current expense and sinking fund purposes and computed the rates of levy therefor as it found necessary, by advertising the same as required by law. The county excise board did neither of those things, but proceeded to act without any authority of law.

Those sections were under consideration by this court in Jones, County Treasurer, v. Blaine, 149 Okla. 153, 300 Pac. 369, in which this court said:

"From the information contained in those instruments, the excise board is required to make the appropriations and to compute the rate of levy."

In Grubb v. Smiley, County Treasurer, 142 Okla. 19, 285 Pac. 38, this court held:

"Where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such are conditions precedent to the exercise of the power to levy tax, and all the requirements of the statute must be complied with, or that tax cannot be collected."

That holding was based upon the prior holding of this court in Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969; City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640; Ryan, County Treasurer, v. Roach Drug Co., 113 Okla. 130, 239 Pac. 912, and Ryan v. Cook Building & Investment Co., 113 Okla.

78, 239 Pac. 919. In Ryan, Co. Treas., v. Roach Drug Co., supra, Mr. Chief Justice Lester, speaking for the court, said:

"Where property is impressed with a tax levy, such levy constitutes a lien thereon which is superior to every other claim, and therefore every safeguard should be used to protect the property of the citizen from an illegal and unwarranted tax levy. We cannot give approval to the language in the plaintiff's brief that 'because the defendant did not follow the provisions of the statute in regard to submitting its budget and estimate to the excise board, such failure was a mere technicality, and no harm was thereby done.' "

In City of Sapulpa v. Land, supra, this court held:

"Taxes are not debts, but are the positive acts of the government, and are the creatures of statute, and must be enforced in the manner provided by the statute."

In Prince, County Treasurer, v. St. Louis & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106, this court held in the second and third syllabus paragraphs:

"Where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy the tax, and all the requirements of the statute must be complied with, or that tax cannot be collected.

"Executive and ministerial officials enforce the tax laws, but, in doing so, they must keep strictly within the authority those laws confer. They neither have nor can have a roving commission to levy and collect taxes from the people without authority of law, but they can only do so in the manner prescribed by the law, which would be the governing rule for their conduct in levying taxes in all cases."

As far back as Nelson, Sheriff, v. Oklahoma City & Western Ry. Co., 24 Okla. 617, 104 Pac. 42, this court held:

"Where the statute requires a series of acts to be performed before the owners of property are properly chargeable with taxes, such acts are conditions precedent to the exercise of the power to levy taxes, and all the requirements of the statute must be complied with, or they cannot be collected."

A proceeding before the Court of Tax Review is a special proceeding authorized by the people to settle controversies involving legality of tax levies. It is not a proceeding in equity. In re Bliss, 142 Okla. 1, 285 Pac. 73, and In re C., R. I. & P. Ry. Co., 143 Okla. 217, 289 Pac. 352.

The opinion of my associates, in so far as it refers to the contention herein discussed, is based on the decision of the Supreme Court of Oklahoma Territory in the case of Sweet v. Boyd, 6 Okla. 700, 52 Pac. 939. That case is not and cannot be in anywise controlling. Therein the proceeding was to enjoin the collection of taxes, and the rule therein announced is applicable only in an equitable case and is limited to an action in equity. That court so limited it and said that where a party invokes the powers of a court of equity to relieve him from the payment of a tax, he must not only show a departure in manner or time from the prescribed proceedings, but that such departure injuriously affects his substantial rights. That has always been the rule in equity and no court of equity has ever been used for the correction of legal wrongs in the absence of a showing of an interference with equitable rights. That case was followed by the Territorial Supreme Court in Boyd v. Wiggins, 7 Okla. 85, 54 Pac. 411, in which it was said, "There is no equity in this case," and in Wilson v. Wiggins, 7 Okla. 517, 54 Pac. 716, in which it was said that there could be no "* * * injunction to restrain the collection of a tax, unless the case is brought within some acknowledged head of equity jurisprudence. * * *" It has never been followed by this court prior to the opinion of the majority in this case, and this court, in Nelson, Sheriff, v. Oklahoma City & Western Ry. Co., supra, distinguished it in an opinion filed September 14, 1909, wherein Mr. Chief Justice Kane said:

"This case simply holds that mere irregularity in the levying of taxes does not render the tax void, and, unless the party who resists the tax can show that he has been injured thereby, he has no standing in a court of equity. In the case at bar, however, the omission was not a mere irregularity, but there was an absolute and utter failure on the part of the township officers to comply with the requirements of the statute."

Even though the equitable rule stated in Sweet v. Boyd, supra, was applicable to a proceeding before the Court of Tax Review, it can have no effect under the facts as shown by the record in this case, for the reason that the record in this case shows that the protestant here has been injured by the method followed in the making of the appropriations and fixing the rates of levy. The nature of that injury will be hereinafter set forth. In Nelson, Sheriff, v. Oklahoma City & Western Ry. Co., supra, the court followed section 4440, Wilson Statutes of 1903, which provided as follows:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assess-

ment, or any proceeding to enforce the same.
* * *"

Mr. Chief Justice Kane quoted the rule which, in my opinion, is applicable and should be applied here, and that is:

"Courts have no rightful authority, by mere construction, to aid the defective execution of a power given or created exclusively by statute, nor dispense with those formalities which the Legislature has seen fit to provide to secure its due execution." (Best v. Gholson, 89 Ill. 465.)

The Legislature of the state of Oklahoma struck down the effect of the decision in Sweet v. Boyd, supra, by the adoption of section 9971, C. O. S. 1921, which reads as follows:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of 30 days, and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein; if, upon final determination of any such suit, the court shall determine that the taxes were illegally collected, as not being due the state, county, or subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

That section was held to be constitutional in Huber v. Akers, 66 Okla. 11, 166 Pac. 892, and to be exclusive in Atchison, T. & S. F. Ry. Co. v. Eldredge, Co. Treas., 65 Okla. 317, 166 Pac. 1085, and in Duling, Co. Treas., v. First Nat. Bank of Weleetka, 71 Okla. 98, 175 Pac. 554. It has been approved by this court many times and, under its provisions, taxpayers who paid taxes under protest sued and recovered the amounts so paid and judgments therefor were affirmed by this court.

That procedure resulted in the securing of refunds of taxes to the disadvantage and detriment of the small taxpayer. After a number of years the people of this state, through the adoption of Initiative Petition No. 100, on the 7th day of August, 1928, established a court of tax review and provided that any taxpayer might protest in writing "any alleged illegality of any levy." With knowledge of the existing statutes and the construction that has been placed upon them by the courts, and with knowledge of the action of public officials whose duty it is to fix tax levies and make appropriations for governmental purposes, the sovereign people of this state, in the highest form of legislative enactment, provided a remedy whereby every taxpayer could benefit by the judicial determination of the illegality of any tax levy.

The statutes hereinabove quoted authorize the excise board to make appropriations and fix rates of levy for townships. As a condition thereto the township officers must have performed certain duties and, in the absence of the performance of those duties by the township officers, the excise board is without authority either to make appropriations or fix rates of levy except by causing the same to be advertised as provided by section 9700, supra.

There was no advertisement by the excise board in this case and we must look to the proceedings of the township officers for the authority of the excise board to proceed. Those statutes prohibit the making of appropriations in excess of the needs of the township for the ensuing year, and the estimate of the township officers for current expenses must be of an amount reasonably necessary for the proper conduct of the affairs of the township. The determination of that question is to be made by the township officers and not by the excise board. There must be certified to the excise board not only a set of figures, such as was transmitted to the excise board in this case, but there must be a certification that the estimated needs are reasonably necessary for the proper conduct of the affairs of the township during the ensuing fiscal year. The township officers never made any such certificate and there is nothing in this record to show that any individual ever testified or stated that the figures transmitted to the excise board as an estimate of needs were in amounts reasonably necessary for the proper conduct of the affairs of the township during the ensuing fiscal year. The statutes further require that the estimated income shown shall not be in excess of the amount collected from the same sources during the previous fiscal year. For that purpose there is required to be a showing by the township officers of the amount collected during the previous fiscal year, and that must be

a true and correct statement of the records as shown by the books of the township. There must be certified to the county excise board, first, that the figures as to the estimated income are true and correct as shown by the books of the township, and, second, that the estimated income is not in excess of the amount collected from the same sources during the previous fiscal year. The excise board does not have the books and it has no way of acquiring this information except as certified to it by the township officers. In this case there was no certification thereof and no one testified or even stated, so far as this record shows, that the figures contained in the blank transmitted to the excise board were true and correct, or that they were taken from the books of the township, or that the estimated income shown thereon was not in excess of the amount collected from the same sources during the previous fiscal year.

In my opinion, that initiative petition and the legislation adopted by the affirmative vote of the people thereon should not be struck down by this court by a decision which holds, in effect, that a county excise board may make a tax levy for a township when no township officer has sworn to the correctness of the financial statement or estimates of needs and where no such financial statement or estimate has been certified to the county excise board. It is not sufficient, in my opinion, to say that such financial statement was "submitted to the excise board." The statutes quoted herein require a record to be made of the procedure leading up to the making of a tax levy. Following those statutes, the State Examiner and Inspector prepared and caused to be printed on the blanks to be used a certificate in conformity with the statute and a place for the verification of the facts therein stated. This record is silent as to the estimate for current expenses being reasonably necessary for the proper conduct of the affairs of the township. It is silent as to the estimated income from sources other than ad valorem taxation not being in excess of the amount collected from the same sources during the previous fiscal year. That is information that is required under the statutes to be given to the county excise board, and it must be given to them in a written form, and verbal testimony thereof, in my opinion, is not sufficient, and in this case there is not even verbal testimony thereof. When this court approves the levies made for these four townships it is approving the action of the excise board not only without the financial statements and estimates having been certified to it, but without any showing of the correctness thereof, that the

estimated amount is reasonably necessary for the conduct of the municipality, or that the estimated income is not in excess of the amount collected from the same sources during the previous fiscal year. We are approving a rule by which the county excise board may act without the information required by the statute to be furnished to it before it can act.

The opinion in this case establishes a new practice and one in violation of the statutes by permitting an excise board to make appropriations and fix rates of levy for townships without the information required to be certified to it before it can proceed to perform its duties. We are not particularly concerned with the distinction between certification and transmission or submission. What we are concerned with is a statutory board acting without the information necessary to be had by it before it can act. Herein the excise board did not have the information necessary for it to have before it could proceed with the making of appropriations or fixing of rates of levy for the township.

The majority opinion cites Board of Commissioners of Garfield County v. Field, 63 Okla. 80, 162 Pac. 733, and In re Rolater, 67 Okla. 215, 170 Pac. 507, to the effect that the requirement that the assessor verify the assessment roll is directory and not mandatory and that the failure upon the part of the assessor to attach the oath to the assessment roll will not defeat a tax in a collateral proceeding. Those cases dealt with what is now section 9621, C. O. S. 1921, one of the sections in the article dealing with assessment and procedure. The basis of those decisions is that the statute provides a mode by which appeals may be taken from assessments or equalizations and that that remedy is exclusive and that equitable remedies cannot be resorted to. Such is the fourth syllabus paragraph in the first cited case and upon which the other is predicated. That was an action for injunction. This is not an action for injunction. There, there was a right of appeal. Here, there is no right of appeal. There, the plain, adequate, and complete remedy furnished by the statute was ignored and a suit for injunction was instituted. Here, the remedy provided by the people for the correction of illegal tax levies has been followed and the tribunal established by the people has affirmatively found that the tax levies in this case were illegal and void.

While this court in Bonaparte v. Nelson, 142 Okla. 54, 285 Pac. 100, announced a presumption rule, that rule can have no application here by reason of the fact that

the evidence here shows that there was no certification as required by the statute. Since there was no compliance, there cannot be said to have been even a "substantial" compliance. There is positive proof here rebutting any presumption that might exist. In that case, Mr. Justice Swindall stated that the financial statements must be "certified to the excise board of the county," but held that the certification might be by the county clerk and that it was not required to be by the members of the board of county commissioners, and that they were so certified. Here, there was no certification by anyone.

I might be willing to agree that "transmission" is sufficient in lieu of "certification" if the thing transmitted was otherwise correct and in conformity with the statutory requirements, but this record shows that the things required to be certified were not even transmitted. The statutes do not require certification of a mass of figures, but of definite facts. Here the record shows that there was no showing, either by certificate or testimony, to the county excise board of the truthfulness and correctness of the financial statement, that the estimated needs were reasonably necessary for the proper conduct of the affairs of the municipality, or that the estimated income was not in excess of the amount collected from the same sources during the previous fiscal year. In the absence of such a showing, the county excise board did not have information from which it could make any appropriation or fix any rate of levy. That information is required by the statute to be furnished to it, and the failure to furnish it is not an immaterial error, but such an error as to defeat the very purpose of the legislation. There is no other way for the county excise board to procure the information required by it, and the record here shows that when the county excise board acted, it acted without the required information. How did the county excise board know that the estimated needs were reasonably necessary? No official had told them. No official had certified to that fact. It must have acted and did act without that information.

In my opinion, the rule announced by my associates is so far reaching as to destroy the effect of the legislative provision safeguarding the rights of the people, and for that reason I am forced to dissent.